ANNIE E. RUMRILL, administratrix, *vs.* JOHN H. ASH.

Hampden.　　October 5, 1897. — October 21, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Evidence — Admissions — Instructions — Exceptions.*

If the judge presiding at a trial refuses to instruct the jury, as requested by the defendant, that evidence of verbal admissions should be received by them with great caution, and to give other instructions of similar import, and in his charge states correctly the nature of evidence of admissions and the elements which give such evidence weight, the defendant shows no ground of exception.

If a witness at the trial of an action testifies to an important admission made to him by the defendant, and a fact as to the subsequent conduct of the witness brought out in his cross-examination, if left unexplained, would warrant the argument that no such admission was made, and the defendant's counsel states to the judge that he should contend that it was significant, the witness is rightly permitted to explain such fact.

No exception lies to the admission of testimony of a witness for the plaintiff in an action, which is part of a conversation that was important and was admitted without objection, and which contains nothing more than the defendant had previously admitted in his testimony.

CONTRACT, by the administratrix of the estate of James B. Rumrill, upon a promissory note for $3,400 or $3,500, alleged to have been made by the defendant on November 30, 1894, payable on demand to the plaintiff's intestate, and to have been lost. Answer: 1. A general denial. 2. Payment. Trial in the Superior Court, before *Lilley,* J., who allowed a bill of exceptions, in substance as follows.

It appeared that the plaintiff's intestate was without property

until about October 1, 1894, when he came into possession, by inheritance, of about $9,000, mostly in cash; that he had lived apart from his family for the ten years next preceding his death; that he boarded at a hotel in Chicopee kept by the defendant from about October 1, 1894, until January 6, 1895, when, owing to some trouble between him and the defendant, he removed to a neighboring hotel, and there died on January 19, 1895, after a short illness; and that the plaintiff is his widow.

To prove the consideration for the note, the plaintiff called Arthur B. West and Edward Pynchon, cashier and teller respectively of the Chicopee National Bank of Springfield, each of whom testified that the plaintiff's intestate had an account at that bank from October 12, 1894, until his death, and identified two checks drawn by him to the order of the defendant, one for $500, dated November 9, 1894, and one for $3,000, dated November 30, 1894, both indorsed by the defendant; and that the defendant deposited both checks, each on the day of its date, to his own credit, in the same bank, where he also had an account.

The witness West testified, against the defendant's objection, that the plaintiff's intestate made a deposit of $7,000 on October 12, 1894, in said bank.

William G. Rumrill, a son of the plaintiff's intestate, testified that, on the morning of his father's death, he called on the defendant and asked him "if he knew where my father's deeds and notes and bank-book were, and he said he didn't know where his notes were; but his deeds were locked up in his (defendant's) safe"; and that he also said, "There is that note of mine for thirty-five hundred dollars, and one of John Sullivan's for fifty dollars, I don't know where they are." Upon cross-examination, the witness testified that the defendant told him at the same interview that the last he knew of the notes and bank-book they were in the safe of one Frank Morton, a few minutes' walk from the place where the interview took place; and that the witness did not go to Morton's to look for them. Upon redirect examination, the witness was asked, "Why didn't you go to Frank Morton's safe?" The defendant objected, and, in answer to a question by the judge, stated that he should contend that there was significance in the failure to go to Morton's. The witness was then permitted to answer, against the defend-

ant's objection, " The day my father took the papers away from Mr. Morton's safe he told me he had been over there and got them from Mr. Morton, and he said he and Mr. Morton had a few words. That's why I did n't go there, and I told the defendant they were n't there because my father told me so." It did not appear at what time this conversation between the witness and his father occurred, and the defendant did not ask to have the evidence restricted to any particular purpose.

The defendant testified that he paid back to the plaintiff's intestate $100 at the time he received from him the check for $3,000, and gave his note for $3,400 ; that he paid the note to the intestate in bank bills in three instalments, the last being at the defendant's barn on January 11, 1895 ; that his brother, Thomas J. Ash, was present at the last payment ; that the note was delivered up to him when the last payment was made ; and that he immediately afterwards showed it to his wife, Annie C. Ash, and destroyed it in her presence. The defendant's brother and wife corroborated respectively his testimony in regard to this last payment and the destruction of the note. Thomas J. Ash also testified that the plaintiff's intestate told him about one of the other payments, and one Kelley corroborated Thomas J. Ash in respect thereto. The defendant also testified that some deeds belonging to the plaintiff's intestate were delivered to him by the latter prior to the making of the note in suit, and were kept in his safe until after the intestate died ; but that he never had the conversation with the witness Rumrill which the latter testified as occurring on the morning of the intestate's death.

In rebuttal, one Fitzgerald, an employee of the defendant during all the time the intestate was boarding at the defendant's hotel and for several months thereafter, and who knew before the intestate's death that he had lent a considerable sum to the defendant, testified that on several occasions shortly after the intestate's death the defendant made statements to the witness to the effect that the sum was $3,500 ; that he had not repaid it ; and that he had got the note for $3,500 which he gave for it and had destroyed it, and cautioned Fitzgerald to keep still about it. The defendant denied that he ever made such statements ; and there was other testimony tending to prove that, since this action was commenced, Fitzgerald had stated, " The note has been paid.

I did n't see the money paid, but I remember the time when it was paid." Fitzgerald denied making such statement.

Sidney Sanders, the attorney who brought the action, also testified, in rebuttal, that, at an interview with the defendant shortly after the intestate's death, he demanded payment of the $3,500, whereupon the defendant stated that the note was for only $3,400, and that he had paid it to the intestate; that, in answer to questions by the witness, the defendant stated that he paid it a few days after the intestate left his hotel; that he paid it " on the bridge," which was not the place where the defendant testified that he paid either of the instalments; that he paid it in bills; that no one was present; and that the note was then and there delivered up to him and destroyed by him. The witness was then asked, " Before the defendant left your office that day did you say you would sue him ? " and, against the defendant's objection, was permitted to answer, " I have forgotten, so I could not say absolutely, but I presume I told him, when he said he was n't going to pay it, that I should sue him if it was not paid." The defendant had previously testified, without objection, upon cross-examination, in relation to this interview, that Sanders told him at the close of the interview that he should sue him.

At the close of the evidence, the defendant requested the judge to instruct the jury as follows:

" 1. Evidence of verbal admissions should be received by the jury with great caution. 2. Admissions and declarations should be scrutinized and received by the jury with caution, as that is the most dangerous evidence that can be admitted in a court of justice, and the most liable to abuse. 3. Evidence of admissions by the defendant should precisely identify the admissions, and show such admissions deliberately made by the defendant."

The judge refused to give the instructions requested, and upon the point covered by these requests instructed the jury as follows:

" There is evidence with reference to conversations between William G. Rumrill, who is the son of James, and the defendant, which would tend to show, provided you are satisfied of the truth of the evidence, that the defendant did not at that time assert that he had paid the note, but on the contrary made statements which would lead to the inference that he had not paid the note.

But you understand that the defendant denies that he had such conversation. Then there is evidence in the case to which your attention has been directed in argument, and which you ought to consider together with all the other evidence in the case, coming mainly from Fitzgerald. Fitzgerald says that soon after Rumrill died, if not on the same day then the next day, he had a conversation with the defendant, in which he said to him in effect, — I do not undertake to state it precisely, — but in effect that he was indebted to Rumrill in a considerable sum; he did not name the sum; that he, however, had the note which he had given to Rumrill and that nobody would know anything about it, and that he, Fitzgerald, should not say anything about it to anybody. And the plaintiff relies to some extent upon this statement then made, and upon a subsequent occasion by the defendant to Fitzgerald. Fitzgerald relates another conversation at a later time, which he had with the defendant, in the course of which he made substantially the same statement, that he owed Rumrill this money, but that he had acquired possession of the promissory note, and that the Rumrills could not prove that he owed the father and husband, and that he, Fitzgerald, should say nothing about it. As I say, the plaintiff relies upon that evidence, as well as the other evidence in the case. Now, if you are satisfied upon the evidence in the case that Fitzgerald has related to you the substance of what the defendant said to him upon those occasions to which reference has been made, and you are first to be satisfied that he has given you the substance of those statements, why then that will be evidence that will be entitled to consideration; it will be evidence in the nature of an admission of indebtedness upon the part of the defendant to James B. Rumrill, and, furthermore, evidence of an assertion upon his part that he owed Rumrill. It sometimes happens, as you know, as we all know, that where one man undertakes to repeat something which some other person has said to him, he, through not using the correct equivalent of the words which were employed in the conversation, gives a different complexion and color to what has been said than it ought really to have, and therefore it is important that you should be satisfied, as I have already said, that Fitzgerald has repeated correctly in substance what the defendant said to him. If you are satisfied that he has given the sub-

stance correctly of what the defendant said, then, as it has been suggested, that would be in the nature of an admission upon the part of the defendant, in the nature even of an assertion, that he owed Rumrill this money and that he was undertaking to escape from the payment of the debt to the estate by suppressing the evidence of the debt, that is, the promissory note.   I do not mean, by referring to these particular pieces of evidence, to give to them undue prominence over the other testimony in the case.   It is for you to say what significance the evidence shall have.   It is for you to say how much more important one piece of evidence is than another, if there is a difference in the effect and significance of one as against another."

The jury found specially that the note was for $3,500, and that it was destroyed without right by the defendant, and returned a verdict for the plaintiff; and the defendant alleged exceptions.

*D. E. Leary*, for the defendant.

*J. L. Rice & J. T. Moriarty*, for the plaintiff.

KNOWLTON, J.   1. No exception lies to the refusal of the presiding justice to instruct the jury that evidence of verbal admissions should be received with great caution, and to give the other instructions requested of similar import.   The weight of such evidence is for the jury, and although it is not error for a judge to give general instructions in regard to the nature of a certain class of evidence, and the considerations which properly arise in dealing with it, he must be careful, if he does this, not to invade the province of the jury by intimating an opinion upon the facts of the particular case, nor to state propositions which are not true in their general application to evidence of that class. If he chooses to leave the jury to deal with questions of fact in the light of their experience and judgment, without his aid, the parties have no legal ground of objection.   *Commonwealth* v. *Downing*, 4 Gray, 29.   *Commonwealth* v. *Whitcomb*, 12 Gray, 126. *Commonwealth* v. *Wood*, 11 Gray, 85.   *Commonwealth* v. *Brown*, 121 Mass. 69.   *Commonwealth* v. *Bishop*, 165 Mass. 148.   In the present case the judge stated correctly the nature of evidence of admissions, and the elements which give such evidence weight. These instructions were sufficient for the assistance of the jury.

2. The witness Rumrill, the son of the plaintiff's intestate,

testified to an important admission made by the defendant on the morning after the death of the witness's father. The fact brought out in his cross-examination, that he did not go to look for the note in the safe of Morton, after the defendant had told him that it was there the last he knew of it, could have been used by the defendant's counsel in argument with considerable effect as tending to show that no such admission was made, if the testimony had been left unexplained. The defendant's counsel, in reply to a question by the judge, stated that he should contend that it was significant. The explanation by the witness was therefore rightly received. The conversation was not competent to show the truth of the matters stated in it, but it gave an adequate explanation of the conduct of the witness.

3. The testimony of Sanders that was objected to was rightly admitted. It was a part of a conversation which was important, and which was admitted without objection. Moreover, it contained nothing more than the defendant himself had previously admitted in his testimony.

The exception to the testimony of West has not been argued, and we treat it as waived. The testimony was rendered immaterial by the subsequent admission of the defendant.

*Exceptions overruled.*