OSCAR M. CHANDLER, executor, *vs.* FREDERICK H. PRINCE.

Suffolk. January 14, 1914. — May 19, 1914.

Present: RUGG, C. J., BRALEY, SHELDON, DE COURCY, & CROSBY, JJ.

*Evidence,* Presumptions and burden of proof, Explanation of non-production of books of account, Competency. *Wagering Contracts. Practice, Civil,* Auditor's report, Exceptions. *Damages,* In contract.

In an action under R. L. c. 99, § 4, for the value of securities alleged to have been delivered as margins on wagering contracts, where it appeared that orders were given to sell stocks which the customer did not own, but an auditor made a report in the defendant's favor, the defendant contended that the *prima facie* evidence by virtue of § 6 of the statute, that there was an intention that there should be no actual purchase or sale and that there was reasonable cause to believe that such intention existed, was rebutted by the auditor's report, which by R. L. c. 165, §§ 55, 56, also was made *prima facie* evidence, and that in the absence of other evidence of such intent the plaintiff could not be found to have sustained the burden of proving these essential facts. *Held,* that, as these statutes contained no provision in regard to the equality or the comparative weight of the presumptions of fact created by them, it was for the jury to determine the evidential value of the conflicting presumptions in the light of all the circumstances disclosed by the evidence. In the present case there was oral evidence, contra-

dicting a statement in the auditor's report that could have been found to be material, which would have warranted a finding for the plaintiff.

After the defendant in an action of contract has asked for a ruling restricting the damages to a certain portion of the plaintiff's claim, and has excepted to the refusal of the presiding judge to make this ruling, an agreement made by the defendant's counsel as to the amount of damages that the plaintiff, if he obtains a verdict, is entitled to recover under the ruling of the judge, does not waive the defendant's exception or deprive the defendant of his right, if his exception is sustained, to have a different rule of damages applied which will reduce the amount that can be recovered to a sum far below the sum agreed upon.

In an action under R. L. c. 99, § 4, for the value of securities alleged to have been delivered as margins on wagering contracts, where it appears that the securities belonging to the plaintiff were pledged lawfully to other persons so that he could not deliver them to the defendant, and that the defendant redeemed the . securities from the pledges, thus acquiring a valid lien upon the securities to the extent of the amount of money thus paid by him, and that the securities afterwards were lost in the wagering transactions complained of, the plaintiff is not entitled to recover the full value of the securities, but only the net amount of money received by the defendant from their sale after the discharge of the indebtedness which they had been pledged to secure.

At the trial of an action under R. L. c. 99, § 4, for the value of securities alleged to have been delivered as margins on wagering contracts, where the plaintiff gave the defendant notice to produce his books relating to the transactions in question and the defendant failed to produce them, whereupon the plaintiff put in evidence copies of the material accounts previously furnished by the defendant, the defendant, for the purpose of explaining his non-production of the books and thus rebutting any inference that otherwise might be drawn from their non-production, should be allowed to show, that at a previous hearing in the case before an auditor whose report was in evidence it was agreed by the parties that transcripts of the material portions of the books should be used after ample opportunity had been given to the plaintiff for verification and that this course had been followed at that hearing, so that the defendant reasonably might have assumed that the notice to produce the books at the trial in court was given merely for the purpose of making the copies admissible as secondary evidence.

In an action under R. L. c. 99, §§ 4, 6, by the executor of the will of a woman, for the value of securities alleged to have been delivered by the plaintiff's testatrix to the defendant as margins on wagering contracts, upon the cross-examination of the plaintiff it is proper for the presiding judge to refuse to allow the defendant to ask him as to his knowledge of the losses of his testatrix and of the profits of the defendant in the transactions in question, these being immaterial facts on which the plaintiff's right to recover in no way depends.

In an action under R. L. c. 99, §§ 4, 6, by the executor of the will of a woman, for the value of securities alleged to have been delivered by the plaintiff's testatrix to the defendant as margins on wagering contracts, although it is competent for the plaintiff to show that at the beginning of the relations of the plaintiff's testatrix with the defendant she deposited with him all the securities she had and that at the end of those relations she had no securities, yet the plaintiff should not be allowed to testify, against the defendant's objection, that his testatrix told him that "she had lost all her property, all her money and securities, in stock speculation." In the present case, although such evidence was admitted erroneously, an exception by the defendant to its admission was not

sustained, because it appeared that testimony to the same effect had been admitted earlier in the trial without objection, so that the statement objected to was already in evidence and the defendant was not harmed by its second admission.

CONTRACT under St. 1890, c. 437, §§ 1, 2, 4, (R. L. c. 99, §§ 4, 6, 7,) by the executor of the will of Mary F. Colburn, for the value of certain securities alleged to have been delivered by the plaintiff's testatrix to the defendant as margins on wagering contracts in which the plaintiff's testatrix intended that there should be no actual purchase or sale and the defendant had reasonable cause to believe that such intention existed. Writ dated May 7, 1900.

In the Superior Court the case first was tried before *Dubuque*, J., the jury returned a verdict for the defendant, and exceptions alleged by the plaintiff were sustained by this court in a decision reported in 214 Mass. 180.

There was a new trial before *Bell*, J., the evidence at which is described in the opinion. At the close of the evidence the defendant asked the judge to make the following rulings, besides others which were given by him as instructions to the jury or were embodied in his charge:

"1. On all the evidence your verdict must be for the defendant."

"7. The auditor's finding that the necessary intent on the part of the plaintiff did not exist overcomes the *prima facie* case arising under R. L. c. 99, § 6, and your verdict must, therefore, be for the defendant unless the plaintiff has satisfied you by additional evidence that the necessary intent existed."

"15. In determining the value of the 'thing delivered' by the plaintiff to the defendant, the money received from the sale, made at Mrs. Colburn's request or with her consent, of any of the securities deposited must be regarded as thereafter taking the place of the respective securities.

"16. When the several securities taken over from Head and Company and the Merchants Bank were sold, the money received by the defendant for them took the place of the respective securities, and the plaintiff, even if he had a valid claim under the statute, had no right to demand the securities or their value.

"17. The maximum amount which the plaintiff can recover is the sum received by the defendant upon the sale of the securities deposited on the account, plus dividends, if any, received on the

securities, after deducting the amount of the advances made thereon by the defendant to Head and Company and the Merchants' Bank, with interest thereon, and after deducting also the defendant's reasonable commissions upon the sale of said securities, and the cash paid by him to Mrs. Colburn.

"18. If the plaintiff is entitled to recover at all, he is not entitled to recover the value of any securities which had been sold by the defendant at Mrs. Colburn's request."

The judge refused to make any of these rulings, and submitted the case to the jury with other instructions. The jury returned a verdict for the plaintiff in the sum of $52,339.99, representing the sum of $29,344, with interest from the date of the demand, April 3, 1900, to the date of the verdict. The defendant alleged exceptions, including certain exceptions to the exclusion of evidence which are stated and explained in the opinion.

*J. L. Thorndike*, (*R. G. Dodge* with him,) for the defendant.

*V. J. Loring*, (*W. R. Bigelow* & *J. P. Sylvia, Jr.*, with him,) for the plaintiff.

RUGG, C. J. This is an action to recover from the defendant, a stockbroker, the value of securities and money lost by the plaintiff's testatrix through the kind of stock gambling prohibited by R. L. c. 99.

The defendant contends that a verdict should have been directed in his favor on the ground that the plaintiff's case rested wholly upon the *prima facie* evidence that there was an intention on the part of the customer that there should be no actual sales and that there was reasonable cause on the part of the broker to believe that no such intention existed, established by R. L. c. 99, § 6, from the fact that orders were given to sell stocks which the customer did not own: and that this *prima facie* case was met by the auditor's report in his favor, which of itself was *prima facie* evidence by R. L. c. 165, §§ 55, 56; and thus that, as the *prima facie* evidence of the statute was neutralized by the *prima facie* evidence of the auditor's report, the burden of proof resting upon the plaintiff was not sustained.

This contention is not sound. *Prima facie* evidence means evidence "which standing alone and unexplained" maintains the proposition and warrants "the conclusion to support which it is introduced." *Emmons* v. *Westfield Bank*, 97 Mass. 230, 243.

*Wilder* v. *Cowles,* 100 Mass. 487, 488. *Carroll* v. *Boston Elevated Railway,* 200 Mass. 527, 536. Many statutes have been enacted from time to time establishing certain facts as *prima facie* evidence. The effect of these statutes is that where such fact is proved and there is no other evidence and no foundation for contrary inferences, the conclusion it supports must follow. *Wakefield* v. *American Surety Co.* 209 Mass. 173, 176. But the law does not put all *prima facie* evidence on the same footing, nor declare that it is all of equal probative force. The effect of *prima facie* evidence, when not met or controlled, is established by the law, but its weight is not fixed when it is met or controlled. Then it is to be analyzed and treated according to its worth. When two pieces of evidence conflict, each declared by law to be of *prima facie* force, then the case is thrown open and is to be considered at large upon all the evidence. The tribunal charged with the ascertainment of the facts is bound to determine the inherent evidential value of each piece of evidence and weigh it with the inferences and probabilities arising from all the circumstances, and thus reach a decision. It becomes a question to be decided according to the sound judgment of the jury, which evidence in fact is the more credible. To illustrate: By R. L. c. 29, § 20, it is provided that the record of a city or town clerk as to birth shall be *prima facie* evidence of the fact, while by c. 106, § 25, a certificate of age of a minor, signed and sworn to by the minor and his parent, was made *prima facie* evidence. These two instruments, one under each of these statutes and each made *prima facie* evidence, well might conflict as to the same fact. It is not difficult to determine which of these two instances of *prima facie* evidence commonly would have higher probative value. The uncertainty of the latter has been emphasized by the repeal of that statutory provision and the substitution of the certificate of the city or town clerk wherever available. St. 1909, c. 514, §§ 59, 145. Conflicting evidence, *prima facie* in character, is analogous to conflicting presumptions. It cannot be said as matter of law that one kind is stronger or weaker or equal to another kind. It is a question of fact. The evidence is to be considered as a whole and the truth ascertained as in other cases of contradictory evidence. *Turner* v. *Williams,* 202 Mass. 500, 505.

The facts in the case at bar, however, did not support this con-

tention of the defendant. There was oral testimony at the trial directly contradicting the statement in the auditor's report that all purchases and sales of securities charged in the account were made "upon written orders signed either by Mrs. Colburn or her agent." This testimony may have been believed and found to be material, and, if so, the force of the auditor's report and of his general conclusion was shaken. In other words, there was material evidence outside of that made *prima facie* evidence. Manifestly then the whole question was for the jury. *Lonergan* v. *Peck,* 136 Mass. 361, 365. *Wyman* v. *Whicher,* 179 Mass. 276. *Cohasset* v. *Moors,* 204 Mass. 173. It follows that the defendant's requests for instructions numbered 1 and 7 were denied rightly.

The defendant has saved his right to object to the rule of damages laid down in the charge. He seasonably presented requests setting forth his view of the law in this regard, which were refused subject to his exception. At the close of the part of the charge respecting liability, attention was called specifically to one of these requests and then the judge suggested that as the parties had agreed upon the amount of damages, he would not lay down the rule of damages. Whereupon the counsel for the defendant, referring again to his request, said, "that just goes to the fundamentals. It has nothing to do with our agreement, and calls for the application of an entirely different rule of law." The judge again said he would not give the defendant's requests. Whereupon the defendant's counsel announced the amount of damages agreed upon, if the plaintiff was entitled to recover anything. This was no waiver of the defendant's contention as to the correct rule of damages. In substance it meant that after the judge had refused the defendant's requests, and exception had been saved, he agreed upon the amount, if anything, which must be recovered upon the only rule of damages left open under the ruling of the judge.

The unusual circumstances of this case required the application of the rule of damages contended for by the defendant. The transactions between the plaintiff's testatrix and the defendant began by the transfer to the latter of the qualified title to certain securities held by others upon valid pledges made by her to secure just demands against her. She did not and could not deliver the securities themselves. When the defendant paid the amount for

which these securities were pledged, he succeeded to a valid lien for a like amount in his own interest. There was nothing illegal in that transaction, whatever were the later dealings between the parties. Subsequently she gave to the defendant orders from time to time to sell these securities, and the proceeds were used toward discharging this lien. The defendant was entitled to enforce his lien by legal process, but the same result could be and was accomplished by agreement between the parties. When these sales were made by the defendant upon order of the plaintiff's testatrix, her qualified title was extinguished and transferred to the balance of proceeds left after satisfying the pledge. *Wiggin* v. *Heywood,* 118 Mass. 514, 516. This would have been the situation if there had been no gambling transactions between the parties. But their relations touching the valid pledge was not affected by those subsequent illegal transactions. They were not so connected with the legal relation as to taint the whole. The substance of the affair was that when the securities were sold and the proceeds were applied toward the extinguishment of the lien, this was not illegal and thereupon the cash took the place of the qualified title to the securities and was contributed to the illegal gaming operation. The latter was all which she devoted to that unlawful purpose, and is all which her representative is entitled to recover.

It follows that the substance of the defendant's requests 15, 16, 17 and 18 should have been given, to the effect that the plaintiff was not entitled to recover the value of the securities, but only the net money received by the defendant from their sales made on the express orders of the plaintiff's intestate. This decision does not go beyond the peculiar facts here presented. It does not extend to nor affect a case where the initial deposit with the broker is not subject to a valid pledge or lien.

There is nothing at variance with this result in the earlier opinion in this case. The point now decided was not then necessary to be determined. Nor is it within the principles established in the numerous other cases decided under R. L. c. 99.

The plaintiff gave notice to the defendant to produce at the trial his books touching the transactions in question. The defendant did not produce them, but when the plaintiff's counsel during the trial called for the notice, his counsel replied in substance that

copies of all accounts had been furnished long before, with opportunity to verify them. It was said by the judge and the counsel for the plaintiff in the colloquy which followed, that the failure to produce the books gave the plaintiff an opportunity to use the copies as evidence, and they were so used. The defendant then, for the purpose of meeting such inferences as the plaintiff might seek to draw from the fact that the books were not produced in response to the notice, offered to show in substance that at the hearing before the auditor it was agreed by the parties that transcripts of the material portions of the books should be used after ample opportunity for verification from the books by the plaintiff, and that this course was followed in that hearing. It appears from the charge of the judge that an argument in behalf of the plaintiff was addressed to the jury based on the failure to produce the books, and instructions were given the jury touching the effect of such suppression of evidence. Hence it cannot be said that the defendant suffered no harm, if there was error. Unexplained failure to produce evidence, called for by notice or otherwise and within the control of a party, which naturally would be produced if helpful, is foundation for the drawing of adverse inferences by the jury. *Howe* v. *Howe*, 199 Mass. 598. *Buckley* v. *Boston Elevated Railway*, 215 Mass. 50, 56. Fairness demands that under such circumstances a party who fails to proffer such evidence be given opportunity to make explanation. *Commonwealth* v. *Costello*, 119 Mass. 214. *Rumrill* v. *Ash*, 169 Mass. 341. *Commonwealth* v. *Goldberg*, 212 Mass. 88, 91. *Callahan* v. *Boston Elevated Railway*, 215 Mass. 171, 174. The evidence offered by the defendant had a tendency to explain rationally his failure to produce a large number of books of account and should have been received. Where the parties by agreement had gone through one hearing without the original books by using copies of their material parts, it well might have been thought reasonable by the jury for the defendant to assume that the notice to produce the books was intended only to lay the foundation for the use of copies and was not based on a desire to use the books themselves in evidence. At least it was a subject for argument. See also 214 Mass. 180, 182.

The defendant's exceptions to the exclusion of questions asked on the cross-examination of the plaintiff as to his knowledge of

the amount of the losses of his testatrix and of the profits to the defendant arising out of the transactions must be overruled. These detached facts were of no consequence, and the right to recover did not depend upon them. *Greene* v. *Corey*, 210 Mass. 536, 547. *Corey* v. *Griffin*, 181 Mass. 229, 232. The account of all these transactions was before the jury rightly. It was permissible for one familiar with the account to analyze it and to show its details with reference to the ultimate facts whether the transactions were genuine or merely wagering contracts within the statute, whether the customer's intent was that there should be no actual purchases or sales, and whether the defendant had reasonable cause to believe that such was the customer's intent. This is the extent of the decision when the case was here before. 214 Mass. 180, 181. But the evidence to the exclusion of which the defendant excepted was not directed to this end. It was a bald attempt to show who had lost or gained by the transactions and how much.

Considerable latitude in the introduction of evidence must be allowed in this respect, and something left to the discretion of the trial judge. The proportion of broker's commissions received by the defendant does not appear to have been material, nor within the rule of evidence declared in the earlier decision of the case.

The testimony of the plaintiff, excepted to by the defendant, that his testatrix told him that "she had lost all her property, all her money and securities, in stock speculation" was incompetent. A material issue was whether the plaintiff's testatrix had any of the stocks which were the ostensible subject of these transactions or whether they all were that kind of gambling prohibited by the statute. The extent of her financial resources and the stocks actually owned by her bore upon this issue. *Carpenter* v. *Leonard*, 3 Allen, 32. *Bliss* v. *Johnson*, 162 Mass. 323. To this end it was competent to show that at the beginning of her relations with the defendant, she deposited with him all the securities she had, and at the end of those relations she had no securities. But the evidence of her statement to the plaintiff went beyond this. This exception should not be sustained, because the same evidence in substance was earlier admitted without exception. *Morrison* v. *Lawrence*, 186 Mass. 456, 458. But the evidence was not admissible and the point is decided as it may arise on a new trial.

*Exceptions sustained.*