OSCAR M. CHANDLER, executor, *vs.* FREDERICK H. PRINCE.

Suffolk.     March 8, 1915. — June 23, 1915.

Present: RUGG, C. J., LORING, DE COURCY, PIERCE, & CARROLL, JJ.

*Wagering Contract. Evidence,* Auditor's report, Presumptions and burden of proof, Testimony at former trial. *Practice, Civil,* Exceptions, Requests for instructions, Judge's charge, Verdict. *Rules of Court.*

In an action under R. L. c. 99, § 4, by the executor of the will of a woman, for the value of securities alleged to have been delivered by the plaintiff's testatrix to the defendant as margins on wagering contracts, where an auditor found that the testatrix employed the defendant, who was a stockbroker, "to buy and sell securities upon her account upon margin contracts, intending at the time, that the defendant should make actual purchase or sale of such securities as she from time to time ordered," and where it appeared that this finding covered all purchases and all sales ordered by the testatrix including twenty-five short sales of stocks not owned by her when she gave the order to sell, there is evidence warranting a verdict for the defendant; and this is none the less so by reason of a finding of the auditor that the testatrix employed the defendant to "carry for her upon margins such [securities] as were purchased until their sale was ordered," or by reason of a finding that the testatrix "never intended herself to pay the defendant in full for all said purchases, but she intended and contracted that after the defendant had made the actual purchases ordered that he should carry the securities for her upon margin, and sell such as she ordered to be sold or deliver to her any that she might elect to pay for in full."

In the case above described the defendant set up and relied upon the affirmative defence that the purchases and sales were actual ones, and it was *pointed out* by this court, that the presumption created by the provision of R. L. c. 99, § 6, that the fact that the seller or the person employing another to sell for his account did not own the securities at the time of giving the order to sell shall "be *prima facie* evidence that within the meaning of section four there was an intention that there should be no actual purchase or sale," does not apply to the issue of the affirmative defence under § 4 that the purchases and sales were actual ones.

At a new trial of an action, after a rescript of this court sustaining exceptions, a transcript of the testimony given at the former trial by one of the witnesses for the adverse party who is living and within the jurisdiction of the court, is not competent in place of the witness who might be summoned.

An objection to the consideration of evidence, which previously in the trial had been admitted without objection, made when the judge referred to the evidence in his charge by saying to the jury, "You may exclude that from your minds unless it appears that it was admitted without objection," here was not considered as an exception, because an objection is not an exception. The evidence here referred to was merely a statement of a witness that he did not remember whether a certain witness at a former trial of the case gave certain testimony.

Where at the close of the charge of the presiding judge at a trial, one of the counsel asked orally for a certain instruction, to which the judge replied, "I gave everything that you requested that I thought ought to be given," this was *held* to have been a refusal by the judge to give, under Rule 45 of the Superior Court, special leave to present a further request after the conclusion of the charge.

A presiding judge at a trial in his charge to the jury, after having given instructions which were asked for by the plaintiff and by the defendant, added the following: "I do not think, gentlemen, you will get very much help from any requests that I read to you. I do not think generally requests have very much effect with a jury, because I do not think they impress them so much as an oral charge from the judge. I tried to cover in what I have said to you orally substantially everything that I think I ought to give in those requests, but lest I might have omitted something I have taken them up and have given you the requests that I think the plaintiff and the defendant are entitled to." No objection was made to this at the time, but afterwards one of the parties, at the argument of his exceptions, complained that the effect of this statement was to take back the instructions that the judge had read to the jury in accordance with the requests, and that this treatment of the requests was equivalent to refusing them. *Held*, that this contention was not justified, and that the instructions given by the judge in accordance with the requests were to be treated as given in the proper manner.

In an action under R. L. c. 99, § 4, by the executor of the will of a woman, for the value of securities alleged to have been delivered by the plaintiff's testatrix to the defendant as margins on wagering contracts, the presiding judge put to the jury two questions as follows: 1. "Did the plaintiff's testatrix intend there should be no actual purchase or sale of the stocks?" 2. "Did the defendant have reasonable cause to believe that such intention existed on the part of the plaintiff's testatrix?" The judge, after some confusion of statement, finally explained the questions correctly and, in answer to an inquiry from the judge as to whether the explanation was clear, the foreman of

the jury said "I guess that is clear, your honor." The judge failed to instruct the jury that if they answered the first question in the negative, they should not answer the second question, but on the contrary there were written beneath the second question the words, "You will answer that also yes or no." To the first question the jury answered, "No," and to the second question they answered, "Yes." They returned a general verdict for the defendant. There had been evidence of certain short sales which under § 6 of the statute was *prima facie* evidence that the defendant had had reasonable cause to believe that the plaintiff's intestate, when she gave the orders, intended that there should be no actual purchase or sale. An auditor, who in his report had found for the defendant on the first question, had made no finding on the issue covered by the second question. *Held,* that under all the circumstances there was nothing in the answer to the second question that tended to show that the jury misunderstood the instructions as to the first question and that accordingly the exceptions to the instructions in regard to the first question must be overruled, and that, all other exceptions having been disposed of, the general verdict for the defendant must stand.

LORING, J. This is the third time that this case has been before this court. *Chandler* v. *Prince*, 214 Mass. 180; 217 Mass. 451.

At the last trial * the plaintiff put in evidence the account furnished to him by the defendant, showing the transactions between the plaintiff's testatrix and the defendant. In addition he went upon the witness stand himself. From his testimony it appeared that the plaintiff and his half brother were financially interested in the result of the case; that the half brother (Kimball by name) managed the account for the testatrix and at the time of the trial was accessible as a witness. It appears from the bill of exceptions that he was not put upon the witness stand. In addition the plaintiff called an expert accountant (George by name) who testified that he was not only an expert accountant but that he was familiar with the brokerage business, having been engaged in it for some nine years. He testified that there were some twenty-five short sales in the defendant's account covering his transactions with the plaintiff's testatrix. On cross-examination he testified that short sales are one of the recognized

---

* Before *Stevens,* J. The action was brought under St. 1890, c. 437, §§ 1, 2, 4, (R. L. c. 99, §§ 4, 6, 7,) to recover the value of certain securities alleged to have been delivered by the plaintiff's testatrix to the defendant as margins on wagering contracts. The writ was dated May 7, 1900. St. 1890, c. 437, was amended by St. 1901, c. 459, and the statute as amended was re-enacted in R. L. c. 99, §§ 4–7. The amended statute applies to cases that were pending, as this one was, at the time of its enactment. *Wilson* v. *Head*, 184 Mass. 515.

forms of speculation and that where a broker makes a short sale for a customer the stock sold "is usually delivered on balance," and if there is no balance "he would have to get that certificate in some way to make his delivery the following day;" and that "borrowing certificates is common . . . among brokers." Then in answer to the question: "Because the broker has got to make delivery the next day whether or not he gets his certificate or not?" the witness answered, "Got to make delivery the following day some way or other." The plaintiff then rested. ·

The defendant put in the auditor's report and proved by the desk clerk of the Merchants National Bank that certain securities which are stated in the account to have been taken over by the defendant on payment of $11,000 were taken over by the defendant from the Merchants National Bank on payment of the sum for which those securities were pledged to that bank, and that the securities which by the account appeared to have been taken over from Charles Head and Company were taken over from that firm on payment by the defendant of the amount due from the testatrix to that firm. The defendant then rested.

In rebuttal the junior counsel for the plaintiff testified as to some evidence before the auditor. The plaintiff put in evidence the fact that one Smith attended to the "stock end" of the defendant's business. It appeared from the bill of exceptions that Mr. Smith was not called as a witness by the defendant. The plaintiff offered in evidence a certified transcript of the testimony of Smith taken at the first and second trials. These were excluded and exceptions were taken. In addition an expert was called as a witness in rebuttal by the plaintiff, who testified to the fact that after the defendant had furnished the plaintiff with copies of the defendant's account covering his transactions with the plaintiff's testatrix (as the account appeared upon his books), he refused to allow the plaintiff to examine his books generally, but offered to allow the plaintiff to verify all the transactions which were stated in that account.

The auditor found that: "After the above mentioned transfer of securities from Head and Company to the defendant, Mrs. Colburn [the plaintiff's testatrix], through her agent Kimball, employed the defendant, who is a stock broker, to buy and sell securities upon her account upon margin contracts, intending at

the time that the defendant should make actual purchase or sale of such securities as she from time to time ordered and carry for her upon margins such as were purchased until their sale was ordered."

The account furnished by the defendant to the plaintiff's testatrix began on November 6, 1895, and continued until August 4, 1897. The last sale shown on it was made on August 4, 1897. The interest was carried forward to March 31, 1900, with a balance then due the defendant of $1,146.02, which never has been paid.

The defendant set up in his answer (*inter alia*) the affirmative defence that actual purchases or sales, or a valid contract therefor, were made by him in all transactions in which he was employed.

The plaintiff made twenty-one requests for rulings. Ten (namely, 1, 2, 3, 4, 5, 6, 7, 8, 16 and 17) were given verbatim. One (12) was given with a modification; eight (namely 9, 10, 11, 13, 15, 20 and 21) were refused without explanation; and two (18 and 19) were refused with an explanation. To the failure to give those not given verbatim the plaintiff took exceptions. The defendant made twenty-nine requests for rulings. Of these fourteen were given verbatim or with explanations, and to that the plaintiff took exceptions. After retiring the jury came into court and received further instructions from the judge in the absence of counsel for both parties. To these instructions the plaintiff took exceptions.

The following questions were submitted to the jury:

"Did the plaintiff's testatrix intend there should be no actual purchase or sale of the stocks other than those delivered to the defendant by Head and Company and by the Merchants National Bank?

"Did the defendant have reasonable cause to believe that such intention existed on the part of the plaintiff's testatrix?

"Did the defendant make actual purchases and sales of the securities ordered by plaintiff's testatrix other than those delivered to him by Head and Company and the Merchants National Bank, or valid contracts therefor?

"Were the securities received from Head and Company and from the Merchants National Bank sold by the defendant by the order of the plaintiff's testatrix or her agent?"

The jury answered "No" to the first question and "Yes" to

the three other questions, and returned a verdict in favor of the defendant.

·. We are of opinion that there was no error in the instructions under which the answer "No" was given to the first question. That being so, the general verdict for the defendant can stand on that answer and it is not material to determine whether the special finding in answer to the third question (that relating to the affirmative defence of actual purchases and sales) was made under proper instructions.

We proceed to the consideration of the exceptions which have to do with the instructions under which the jury answered "No" to the first question, namely: "Did the plaintiff's testatrix intend there should be no actual purchase or sale of the stocks other than those delivered to the defendant by Head and Company and by the Merchants National Bank?"

So far as practicable we take up the exceptions which have to do with the answer to that question in the order in which they are dealt with in the plaintiff's brief.

1. The plaintiff contends that his request for a verdict in his favor as matter of law should have been granted.

So far as the first question is concerned the plaintiff's first contention in support of this ruling is that the finding which was made by the auditor does not meet ₃ the statutory *prima facie* case made out by the presence of short sales in the account rendered by the defendant. His contention is that from the terms of the finding it does not cover the short sales. We are of opinion that it does. The finding was in these words: "Mrs. Colburn . . . employed the defendant who is a stock broker, to buy and sell securities upon her account upon margin contracts, intending at the time, that the defendant should make actual purchase or sale of such securities as she from time to time ordered." That covers all purchases and all sales ordered by her including short sales, i. e. sales of stocks not owned by her when she gave the order to sell. The further finding in these words, "and [to] carry for her upon margins such as were purchased until their sale was ordered," does not cut down the previous finding. It describes the course of business which under her employment the defendant was to pursue with respect to stocks purchased on Mrs. Colburn's order. Neither is the original finding cut down (as the

plaintiff contends that it is cut down) by the following finding made by the auditor in connection with his finding that the defendant made out the affirmative defence of actual purchases and sales. In that connection the auditor found that: "Mrs. Colburn never intended herself to pay the defendant in full for all said purchases, but she intended and contracted that after the defendant had made the actual purchases ordered that he should carry the securities for her upon margin, and sell such as she ordered to be sold or deliver to her any that she might elect to pay for in full." The plaintiff's contention as to this finding is disposed of by what was said above as to the other finding, namely: It describes the course of business to be pursued by the defendant in acting for the plaintiff's testatrix.

The next contention made by the plaintiff in support of this request is that what the auditor found was that Mrs. Colburn intended at the time the account was opened that actual purchases and sales should be made by the defendant; that her intention at the time the subsequent orders were given is the intention which is decisive, and that the auditor made no finding as to her intention at that time. The finding is that "Mrs. Colburn . . . employed the defendant . . . to buy and sell securities upon her account . . . intending at the time, that the defendant should make actual purchase or sale of such securities as she from time to time ordered." This is a finding of intention that actual purchases and sales should be made in the course of the defendant's employment by the plaintiff's testatrix, and there is no suggestion that the character of the employment was changed. This finding covers Mrs. Colburn's intention at the time the orders were given.

The plaintiff further has contended that the auditor's findings are contradicted by the account which he contends was an agreed statement of facts. The account was produced by the defendant and was admitted by him to be a correct account. It was not an agreed statement of facts. As we understand the plaintiff's argument in this connection, it is this: The account shows twenty-five short sales. All that appears in the account is that the short sales were made and the price at which the shares were sold short and the subsequent purchase of these shares and the price then paid for them. The plaintiff's contention is that, that being all

that appears on the account, it is established that that is all that took place. Confessedly if that was all that took place and the testatrix acquiesced in that, it is established that she intended (so far as short sales are concerned) that there should be no actual sale. The short answer is that the auditor found to the contrary. But the more complete answer grows out of the testimony of George, the plaintiff's own witness. From this testimony the jury were warranted in finding that the customary way of executing an order for a short sale is for the broker making the short sale to borrow the stock and to deliver the borrowed stock to the purchaser of the stock sold short in performance of the short sale contract. But this the plaintiff contends as matter of law was not done in this case because there is no statement in the account that stocks were borrowed to make deliveries under short sale contracts. But if the broker borrowed the stocks on delivery to the lender of the market price on the day the stock was borrowed and later on (when the stocks sold short were bought in by him for the testatrix) he delivered the stock so bought in to the lender and received back from the lender the money handed to him when the stocks were borrowed, there would be no sum with which the customer should be finally debited or credited. It was open to the jury to find, on George's testimony and the auditor's finding, that the short sales were actually carried through by delivery of the stock in the usual way by the broker's borrowing the stock and delivering the borrowed stock in performance of the short sale contract. And they were warranted in making the further finding that the reason why the borrowing of the stock (when the short sale was made) and the return of the stock borrowed (when the stock sold short was later bought in) did not appear in the account was because the transaction by its very terms would not and did not result in any sum being due from or to the testatrix and that for that reason it was not stated in the account although it was the fact.

2. The plaintiff has contended that the judge was wrong (first) in not giving his requests 9, 10 and 11\* and (second) in

---

\* The plaintiff's ninth, tenth and eleventh requests for rulings were as follows:

"9. There is no presumption that the auditor's report is right; but the jury are to consider all the evidence for themselves, and may take into con-

giving the defendant's requests 15 and 17.*   In this connection
the plaintiff has complained of the fact that in his charge to them
the judge asked the jury three times whether there was any evi-
dence to contradict the auditor's report.

A statement of a portion of the charge is necessary for a proper
understanding of these matters.   In his instructions to the jury
the presiding judge first told them that an auditor's report is
*prima facie* evidence of the facts found by him, but that when a
trial takes place and other evidence is introduced, the auditor's
report is to be taken in connection with other evidence.   That if
there were no other evidence ordinarily it would be the duty of the
jury to return a verdict in accordance with the auditor's report.
But that there might be inconsistencies in the auditor's report which
would affect the credit to be given to it, or there might be in the
report a statement of the evidence and of facts which would justify
a jury in coming to a conclusion different from that arrived at by
the auditor.   He then gave this instruction: "It appears when
these short sales were made — you remember there were about
twenty-five short sales — it appears that she herself didn't have
in her possession the securities that were sold by the defendant.
That fact itself, if you find it to be a fact — that is the testimony,

---

siteration the manner in which the auditor appears by the report itself to
have performed his duty, in determining what weight they will give to the
report.

"10. Upon all the evidence in this case, as a matter of law, the audi-
tor's report is not now *prima facie* evidence that Mrs. Colburn intended to
make actual purchases and sales, or that the defendant had reasonable
cause to believe that such was her intention.

"11. Upon all the evidence in this case, as a matter of law, the auditor's
report is not now *prima facie* evidence that the defendant did make actual
purchases and sales for Mrs. Colburn's account."

* The defendant's fifteenth and seventeenth requests for rulings were as
follows:

"15. While the R. L. c. 99, § 6, makes the fact that the seller did not own
the securities at the time of giving the order to sell *prima facie* evidence of
the intention described in the statute, that fact affords no evidence that the
sale purporting to have been made by the broker pursuant to such order, was
not actual."

"17. The auditor's finding that the purchases and sales were all actually
made requires a verdict for the defendant in the absence of some evidence
that the transactions were not actual."

at any rate — if you find it — I haven't any right, gentlemen, to assume that you will believe any piece of testimony, but assuming that you do believe that testimony, that she didn't have those securities in her possession at that time, as appeared from the testimony, that is a presumption that she intended at the time when she made this contract that there should be no actual sales. I don't mean when I say presumption — a conclusive presumption, but I mean it is in itself a presumption. When the case was tried before the auditor that presumption existed, what effect he gave to the evidence on the one side and on the other I can't say, but he came to the conclusion after hearing all the evidence — I assume, taking into consideration that assumption [*sic*] — he came to the conclusion that there was an intent on her part to purchase, to have these stocks actually purchased, and that there was not an intent on her part that they should not be purchased. . . . The plaintiff says you ought to give very little weight to the auditor's report, and some evidence has been introduced — largely the evidence comes from Exhibit 3, from the statement that was given by the defendant to the plaintiff. You will have that before you and you will give such weight to it as you may think it may be entitled to. It may be that there are inconsistencies in an auditor's report of such a character as to weaken the effect of it. But you have the report before you; you have not the testimony of the witnesses that ought to be here; you have not the testimony of those witnesses who appeared before the auditor to give such light as they might give you from their presence and from their testimony. But from any testimony is there any evidence in this case to contradict the auditor's report? Is there any testimony in this case — is there anything in the report itself to affect the weight of the auditor's report? It is *prima facie* evidence. What evidence has there been introduced to contradict that evidence? It is not conclusive, the auditor's report is not, if there is other evidence in the case to meet it, to contradict it; but it is for you to take all the testimony on the one side and the other and then give such weight to the auditor's report as you think it may be entitled to. I say to you, as I have said to you before, if the auditor's report, being *prima facie* evidence upon that fact, satisfies you that that is true, that he was justified in making that report, that that is

a fact, why, then of course the plaintiff cannot recover." Later on the judge told the jury that: "I want to repeat to you again a presumption of law which was before the auditor, that the fact, if it be a fact, that the plaintiff's testatrix did not have in her possession these stocks — some of them at any rate — if you find that to be a fact, when the sales were made, it is presumptive evidence that she did not intend that actual sales should be made." That is all that was said as to the effect of the auditor's report in connection with the auditor's finding that Mrs. Colburn intended that actual purchases and sales should be made. Further on in his charge the judge dealt with the effect of the auditor's finding (in connection with the affirmative defence) that actual purchases and sales were made by the plaintiff in all cases.

On the conclusion of the charge the following colloquy took place: "Mr. Bigelow [the plaintiff's counsel] . . . : In the second place I want your honor to charge, I don't think you did charge specifically — that the short sales are *prima facie* evidence of the plaintiff's intent and of the defendant's reasonable cause to believe. The Court: Well, I gave everything that you requested that I thought ought to be given. Mr. Bigelow: Not only that, but we put in the account with the short sales first. If the auditor's report had never come in we should have had a *prima facie* case on the whole case, and when the auditor's report was read it was not then *prima facie* evidence on the question of intent or of reasonable cause to believe, because we had evidence — The Court: It would not be profitable to argue those questions. Your rights shall be saved to everything I have not given. Mr. Bigelow: I wish to save my rights, calling attention to those particular points. I want to state further that the short sales must be overcome — the evidence in the *prima facie* case must be overcome in some way by the defendant's evidence. I except to the way in which that was put. The Court: You can't except because I didn't give except what you have asked me to give. I gave this — Mr. Bigelow: Well, so far as it was not given, and so far as you did give it contrary to that. 9, 10 and 11 — you didn't give those, I understand. The Court: 9, 10 and 11 — no, I didn't give those."

The exception taken to the adoption by the judge of the de-

fendant's fifteenth and seventeenth requests for rulings does not affect the question of the answer to the first question. Those rulings have to do with the affirmative defence of actual purchases and sales.

The ninth ruling asked for by the plaintiff was given so far as it was correct.

We take up the tenth and eleventh requests for rulings. When this case was last before this court (*Chandler* v. *Prince,* 217 Mass. 451), it was decided that the defendant was not entitled to have the jury instructed that the auditor's finding that the necessary intent on the part of Mrs. Colburn did not exist overcomes the *prima facie* case arising from short sales. In that connection it was said that the *prima facie* case made out by the finding of the auditor and that made out by short sales are in the nature of conflicting evidence *prima facie* in character, that it cannot be said as matter of law that one kind is stronger or weaker or equal to the other; "The evidence is to be considered as a whole and the truth ascertained as in other cases of contradictory evidence." In one respect the charge of the judge went further than the opinion in *Chandler* v. *Prince, ubi supra,* and dealt with a matter not there considered by the court. The presiding judge told the jury that "When that case was tried before the auditor that presumption [arising from short sales] existed, what effect he gave to the evidence on the one side and on the other I can't say, but he came to the conclusion after hearing all the evidence — I assume, taking into consideration that assumption [*sic*] — he came to the conclusion that there was an intent on her part to purchase, to have these stocks actually purchased, and that there was not an intent on her part that they should not be purchased." And later on he said: "I want to repeat to you again a presumption of law which was before the auditor, that the fact, if it be a fact, that the plaintiff's testatrix did not have in her possession these stocks — some of them at any rate — if you find that to be a fact, when the sales were made, it is presumptive evidence that she did not intend that actual sales should be made." We are of opinion that this was correct. For these reasons the exceptions taken to the refusal of the judge to give the ninth, tenth and eleventh rulings asked for by the plaintiff must be overruled.

This brings us to the complaint made by the plaintiff that the judge asked the jury whether there was any evidence in the case which contradicts the auditor's report.

It may be noted that the judge would seem to have been quite right when later on in his charge he asked the question whether there was any evidence in the case to contradict the auditor's report. At that time he was dealing with the affirmative defence of actual purchases and sales. On that issue the presence of short sales in the account does not raise a presumption as it does on the issue of the intent of the plaintiff's testatrix that there should be no actual purchase or sale.

It is plain that the exception taken to the charge does not cover the complaint now made. By the exception which the plaintiff took to the charge the presiding judge ought to have understood that the plaintiff was insisting upon his ninth, tenth and eleventh requests for rulings. But there was nothing then said which brought to the judge's attention the fact that the plaintiff felt aggrieved by the question asked by him and now complained of, namely, whether there was any evidence in the case to contradict the finding of the auditor on the issue of the intent of the plaintiff's testatrix as to the making of actual purchases and sales.

3. The plaintiff's nineteenth request * had to do with the affirmative defence of actual purchases and sales, and need not be considered.

4. The plaintiff has undertaken to point out what he terms "many serious errors and omissions in the auditor's report." These affect in the main the affirmative defence of actual purchases and sales. But if there were such errors and omissions in the auditor's report affecting the issue covered by the first question the legal aspect of them in connection with the auditor's report was fully covered by the charge of the judge stated above. They were matters to be argued to the jury as reasons for their not adopting the auditor's conclusions.

---

* The plaintiff's nineteenth request for ruling is as follows:

"19. Upon the defendant's claim of actual purchases and sales the omission by the defendant to offer evidence which is within his reach, namely his books, in proof of actual purchases and sales, may be considered by the jury as an admission that the books would not support the defendant's claim."

5. The transcript of the evidence given by Smith at the former trials was excluded properly. He was living and could have been summoned as a witness. The testimony was not competent as admissions made by an agent of the defendant.

6. In the course of his charge to the jury the judge assumed that evidence had been given of what Kimball (the plaintiff's half brother) testified to at one of the former trials. The testimony when given was not objected to. But it did not go further than a statement by the witness that he did not remember whether Kimball did give the testimony as to which inquiry was made. The attention of the judge was called to this fact after he had completed his charge. He thereupon instructed the jury in these words: "If I referred, gentlemen, to any evidence given in this case from Mr. Kimball I was in error about it; you may exclude that from your mind. I always want you not to rely upon my own recollection of the evidence but upon your recollection of the evidence. Of course Mr. Kimball's evidence given before the auditor could not be given here because he could be produced. And, gentlemen, I should not have admitted that evidence if any objection had been made to it, and I don't know, — if I said to you anything in relation to his testimony you may exclude that from your minds unless it appears that it was admitted without objection." The plaintiff's counsel then said: "Then I object." An objection is not an exception. *Ogden* v. *Aspinwall*, 220 Mass. 100.

7. It is stated by the learned counsel for the plaintiff that the judge "did not once instruct them [the jury] that the selling of securities which Mrs. Colburn did not own constituted a *prima facie* case in her favor upon the issues of her intent to wager and the defendant's reasonable cause to believe that she had such intent." It appears from the portions of the charge already set forth that the judge told the jury twice that short sales were *prima facie* evidence that Mrs. Colburn intended that no actual purchases and sales should be made. The judge's statement of the proposition when he stated it for the second time was inaccurate in that he said that it was *prima facie* evidence "that she did not intend that actual sales should be made," in place of *prima facie* evidence that she intended that actual purchases and sales should not be made. But that inaccuracy was favorable to the

plaintiff; and, further, no objection was taken to it. In addition the judge gave the third ruling asked for by the plaintiff, which was the only ruling asked for by him on this point.*

8. At the conclusion of the charge the plaintiff orally asked the judge to instruct the jury "that the short sales are *prima facie* evidence of the plaintiff's intent and of the defendant's reasonable cause to believe." To this the judge said: "I gave everything that you requested that I thought ought to be given." By Rule 45 of the Superior Court requests for instructions have to be made in writing before the closing arguments unless special leave is given. What was said by the judge was a refusal to give special leave with respect to this oral request made after the conclusion of the charge. The third request set out above was the only request upon this point made by the plaintiff in accordance with this rule.

It should be added that the plaintiff in another part of his brief states that the failure to instruct the jury that the short sales were *prima facie* evidence of the defendant's having reasonable cause to believe as well as of Mrs. Colburn's intent, "was cured by the jury's answer to question 2."

9. The next rulings complained of by the plaintiff are those set forth in the defendant's fourth and fifth requests which were adopted by the judge.† These were plainly right, and nothing need be added to what has been said already.

10. The plaintiff contends that the defendant's sixth request

---

* The third ruling asked for by the plaintiff was as follows:

"3. A short sale is the sale of securities which the customer does not own at the time of giving the order to sell, and is *prima facie* evidence of a wagering contract between the customer and the broker."

† The defendant's fourth and fifth requests were as follows:

"4. While R. L. c. 99, § 6, makes the fact that the seller did not own the securities at the time of giving the order to sell *prima facie* evidence of the intention called for by the statute, there is, nevertheless, nothing illegal about a sale made under such circumstances and if Mrs. Colburn intended the defendant actually to make such sales, the plaintiff cannot recover on the strength of them.

"5. If Mrs. Colburn when giving the defendant an order to buy certain securities intended them to be bought and carried for her on margin, although she never intended to take them up herself, she did not have as to such transactions the intent required by the statute."

(which was given by the judge) * is in conflict with the statement in *Chandler* v. *Prince*, 217 Mass. 451, 459, that: "The extent of her financial resources and the stocks actually owned by her bore upon this issue," namely, whether the transactions entered into by the plaintiff's testatrix were wagers or real transactions. The defendant's sixth request was not in conflict with that. The sixth request must be read, as it was given, in connection with the fifth. What the two meant was that if Mrs. Colburn intended that the stocks which she ordered bought on her account by the defendant should be actually delivered to the defendant and carried by him until she paid him his advances incurred in their purchase and took them up on the one hand, or on the other hand until she ordered them sold and delivered by the defendant to the purchaser under that contract of sale, she did not have the intent required by the statute. That it was immaterial which of these two courses of business Mrs. Colburn meant to pursue; and in that connection it was "immaterial that Mrs. Colburn may not have had money enough to take up from the defendant the securities she had ordered purchased."

11. The defendant's seventh and eighth requests adopted by the judge † were correct.

12. The plaintiff complains that the judge did not give the fourteenth and fifteenth rulings asked for by him ‡ and did

---

* The defendant's sixth request was as follows:

"6. It is immaterial that Mrs. Colburn may not have had money enough to take up from the defendant the securities she had ordered purchased."

† The defendant's seventh and eighth requests were as follows:

"7. It is immaterial that the account in question was a speculative or margin account.

"8. Margin transactions are not illegal and the fact that an account is made up entirely of them does not of itself give the customer any right to recover from the broker under the statute in question."

‡ The fourteenth and fifteenth rulings asked for by the plaintiff were as follows:

"14. Even though the defendant executed through the stock exchange every order given by the plaintiff to buy or sell stocks, their dealings may be wagering contracts under Rev. Laws, c. 99, Section 4.

"15. The plaintiff is not bound to prove 'bucketing' as defined in St. 1907, c. 414, in order to recover."

give the twenty-ninth ruling asked for by the defendant.* The plaintiff's fourteenth request and the defendant's twenty-ninth request have to do with the affirmative defence of actual sales and therefore need not be considered.

As to the plaintiff's fifteenth request, it was not necessary to take up the definition of "bucketing" in a statute which so far as appears was not referred to at the trial and was not in question in the case, namely, St. 1907, c. 414. For that reason the judge was justified in not giving that ruling.

13. The plaintiff has contended that he is entitled to have the exception sustained which he took to the way in which the judge dealt with his fifth, sixth, seventh and eighth requests for rulings.† All of these requests had to do with the affirmative defence of actual sales and therefore need not be considered.

14. There is a long argument in the plaintiff's brief as to "short sales" and "actual sales" and as to "borrowing" and as to the "constitutional question." We find no exceptions which raise the questions involved in these arguments and therefore we do

---

* The twenty-ninth ruling asked for by the defendant was as follows:

"29. If the defendant upon the receipt of an order from Mrs. Colburn for the purchase of certain shares of stock listed on the New York Stock Exchange, made a valid contract with a member of said exchange for the delivery of said shares to the defendant on demand then, as to such shares, the affirmative defence permitted by the statute is made out."

† The plaintiff's fifth, sixth, seventh and eighth requests were as follows:

"5. The burden of proving actual purchases and sales is on the defendant, and if the evidence is evenly balanced on that point in the minds of the jury, then the defendant has failed to make out that defence.

"6. The defence of actual purchases and sales depends upon whether the transactions were real ones at the time they were set off against each other in the clearing house of the stock exchange; the set-off cannot be a real one unless the opposite transactions that are so set off are themselves real ones, and have really been made and carried out.

"7. The actuality of the sale, even when carried on through the medium of the stock exchange, depends upon whether the broker actually had in his control the securities called for by the transactions when he set off the deliveries to be made by him as broker for his selling customer, against deliveries to be made to himself as broker for a purchasing customer.

"8. The words 'actual purchase or sale' in c. 99 of the Revised Laws mean a real and tangible transfer of a full and complete title to an existing, definite and certain security."

not consider them. The only request referred to in these arguments is the plaintiff's thirteenth request.* Of this request it is enough to say that there is no evidence in the case that the defendant did buy securities of the plaintiff or sell securities to the plaintiff under his employment.

15. The plaintiff has complained that the twelfth ruling † asked for by him was not given because the judge added at the end the words: "At some time." The addition was correct. It may be doubted whether this instruction had to do with anything but the affirmative defence of actual purchases and sales.

16. After giving the instructions asked for by the plaintiff and the defendant which the judge adopted he added this: "I do not think, gentlemen, you will get very much help from any requests that I read to you. I do not think generally requests have very much effect with a jury, because I do not think they impress them so much as an oral charge from the judge. I tried to cover in what I have said to you orally substantially everything that I think I ought to give in those requests, but lest I might have omitted something I have taken them up and have given you the requests that I think the plaintiff and the defendant are entitled to." No objection was made to this by the plaintiff at the time. He now complains that the effect of this statement was to take back the rulings given by the judge which were set forth in the plaintiff's requests for rulings and so the requests asked for by the plaintiff which the judge said he adopted were in fact refused. We are of opinion that that is not correct.

17. The other exceptions taken by the plaintiff are to the instructions given by the judge when the jury came back for further instructions. These instructions were given in the absence of counsel for both parties. At this time the foreman told the

---

* The plaintiff's thirteenth request was as follows:

"13. Upon all the evidence in the case, as a matter of law, the defendant was employed by the plaintiff to buy and sell securities for her account, and the defendant has no right to buy securities of the plaintiff or sell the securities to the plaintiff under his employment."

† The twelfth ruling asked for by the plaintiff was as follows:

"12. Upon all the evidence in the case, as a matter of law, the contract between the plaintiff and the defendant was that the defendant should buy and sell securities and not that he should make contracts therefor without delivery."

judge that the jury were in a quandary about the first question, stating: "We figure that that is a negative question. The answer yes, for instance, would conflict, and the answer no would conflict." The judge told the jury that the question was put in the form in which it was put because what the plaintiff had to prove in order to make out a case under the statute was that the plaintiff's testatrix intended that there should be no actual purchase or sale of the stocks ordered by her to be purchased and sold on her account by the defendant. He explained that if she intended that there should be no actual purchase the answer should be "Yes." That to make out a case it was necessary that there should be affirmative intention on her part that there should be no actual purchase. The judge then stated the proposition in these words: "If she intended there should be no actual purchase, the answer should be yes. . . . If you say no, it isn't proven that she didn't intend there should be no actual purchase." There was further explanation on the part of the judge, after which the jury were asked if they understood it and they said they did. In the course of that explanation he added this: "If she didn't have any intent about it one way or the other the plaintiff wouldn't recover. The plaintiff can recover only on the ground that she had an affirmative intent that no actual sale should be made. That is the reason why the question is put in that form." After this the judge stated the matter wrongly in these words: "If you say yes, why, the plaintiff cannot recover. . . . Should you say no, then you come to the other question, whether the defendant had reason to believe that she had no intention that the stock — actual sales should be made — or whether he had any reasonable cause to believe." Later the judge said: "I want to change what I said to you. So under the statute, if your answer is yes — 'Did the plaintiff's testatrix intend' — she might be able to recover. If you say no, she didn't have that intention, then she can't recover. Then you come — 'No,' — she can't recover; 'Yes' — perhaps she can recover. If you say yes, she did affirmatively have that intention, that there should be no actual sales or no actual purchases, then you come to the question of whether or not the defendant believed that fact or had reason to believe it." After this the foreman said: "I guess that is clear, your honor." Then the presiding judge said:

"You will answer that question either yes or no. If you answer the question no, she didn't have an intent, to make purchases — (pausing). If she did intend there should be no actual purchase, and you say yes, then you come to the next question, as I have said to you, whether or not the defendant knew of that or ought to have known of it, and if you say the defendant did know of it or ought to have known of it, it would be a defence if the sales or purchases were actual sales or purchases. If you answer no — 'Did the plaintiff's testatrix intend there should be no actual purchases or sales of the stocks other than those delivered to the defendant by Head and Company' — if you say there was not that intent, then the plaintiff can't recover in any event."

Although the judge stated the matter wrongly in one place, he corrected it later on. In addition he was about to state it wrongly in another place, but before he made the statement he paused and then stated it rightly. The matter finally was stated properly by the judge. To make sure of this the judge asked the foreman if it was clear, and the foreman said that it was.

The plaintiff contends that the answer to the second question shows that the jury did not understand the instructions finally given by the judge as to the first question. But we cannot give our assent to that argument. The presence of short sales in the account was *prima facie* evidence that the defendant had reasonable cause to believe that the plaintiff's testatrix, when she gave the orders, intended that there should be no actual purchase and sale. The auditor made no finding upon the issue covered by the second question. Under these circumstances the answer of the jury to the second question was the only answer that they could make to that question. It is true that in his charge to the jury the judge did not tell them that short sales were *prima facie* evidence of reason to believe on the part of the broker. But the statute (making this provision) was read to the jury both by counsel and by the judge. And the plaintiff's admission that the judge's failure to instruct the jury on that point "was cured by the jury's answer to question 2" disposes of the contention.

In his charge to the jury the judge did tell them that if they answered the first question in the negative the plaintiff could not recover. But he did not go on and instruct them that if they an-

swered that question in the negative they should not answer the second question at all. It might have been well if he had done so. Not only did he not do so, but it appears from the bill of exceptions that at the end of the second question these words appeared: "You will answer that also yes or no." Under all the circumstances there is nothing in the answer to the second question which tends to show that the jury misunderstood the instructions as to the first question.

The exceptions as to the instructions under which the answer to the first question was given must be overruled and the general verdict must stand. It is

*So ordered.*

*V. J. Loring & W. R. Bigelow,* (*J. P. Sylvia, Jr.,* with them,) for the plaintiff.

*R. G. Dodge,* (*H. S. Davis* with him,) for the defendant.