FRANK H. RICE *vs.* SAMUEL E. WINSLOW.

Worcester.  January 7, 1902. — February 27, 1902.

Present: HOLMES, C. J., LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Wagering Contracts.  Agency.*

Where a broker is employed to buy and carry stocks on a margin and actually buys and receives the securities there is no violation of St. 1890, c. 437.  The contract under which that statute requires the securities to be actually received and delivered is the contract to buy not the contract to carry.

CONTRACT under St. 1890, c. 437, against a broker for $1,000 and the value of a $1,000 bond of the Worcester Consolidated Street Railway Company paid and delivered by the plaintiff to the defendant as margin for the purchase of certain securities bought and afterwards sold by the defendant.  Writ dated June 9, 1900.

At the trial in the Superior Court, before *Fox*, J., the judge refused to order a verdict for the defendant or to make the rulings requested by him, and among other matters left to the jury the question whether the relation between the plaintiff and the defendant in the transaction was that of buyer and seller, instructing them in substance that, if it was, the plaintiff might recover.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*H. Parker & R. A. Stewart*, for the defendant.

*J. R. Thayer & A. P. Rugg*, for the plaintiff.

LORING, J.  We are of opinion that the defendant is right in his contention that there was no evidence that the relation

between the plaintiff and defendant was that of buyer and seller within the first clause of the second section of St. 1890, c. 437.

There seems to have been some confusion at the trial as to the true construction of St. 1890, c. 437, and as to the application of it to the purchase of securities by brokers for their customers to be carried by them on a margin.

The evil aimed at by St. 1890, c. 437, is the making of "wagering contracts." It is stated in the title that the act is an act "relative to wagering contracts," and the title of an act is part thereof and is to be considered in determining its true construction. *Proprietors of Mills* v. *Randolph*, 157 Mass. 345.

It is to be noticed that St. 1890, c. 437, applies, not only to the purchase and sale of securities, but also to the purchase and sale of personal chattels of all kinds. As securities are the kind of chattels dealt in in the case at bar, we shall for convenience speak of securities only in discussing the statute.

The transactions which are described by the first clause of § 2 are contracts between A. and B., whereby A. agrees to buy of, or to sell to, B. The statute provides that, in case of such a transaction, if there was no intention to perform the contract by the actual receipt and delivery of the securities bought or sold and payment of the price, the other party, having reasonable cause to believe that no intention to perform existed, may recover back any money paid by him. That is to say, if it was intended on one side of the transaction to make a wager under the guise of a contract and the other side had reasonable cause to believe that that was the understanding, the rule of the common law is changed and either party may recover back what he has paid under the contract. See Knowlton, J., in *Lyons* v. *Coe*, 177 Mass. 382, 383.

The transaction, which is described by the second clause of the section, is one, where a person employs another to make in his behalf such a contract as is described in the first clause; that is to say, where A. employs B. to make a wager under guise of contract for the purchase and sale of securities, where no securities are to be delivered, but a settlement is to be made by the payment of differences; if A. employs B. to make a contract for the purchase or sale of securities, and A. had no intention that the contract which he employed B. to make was to be performed,

and B. had reasonable cause to believe that such was A.'s intention, A. can recover any sum paid by him to B.

The actual receipt and delivery of the securities which is material in both clauses of § 2 is the actual receipt and delivery under the contract of purchase or sale. If A. employs B. to buy for him, intending that B. should receive the securities bought from the person from whom he buys them in A.'s behalf, the transaction is not within the statute, and it is entirely immaterial whether A. intended to have B. hold the securities for him, until they should be actually sold and delivered by B. in pursuance of his orders and then to receive the balance from, or pay the loss to, B., or whether he intended ultimately to pay the balance of the purchase money and receive the securities from B. Each case is equally outside of the scope of the act.

The only contention of the plaintiff here, or at the trial, is that where a broker carries stock for a customer, the relation between them is a contractual one; *Wood* v. *Hayes,* 15 Gray, 375; *Covell* v. *Loud,* 135 Mass. 41; *Weston* v. *Jordan,* 168 Mass. 401; and that if the relation is a contractual one, the broker ultimately sells to the customer and that sale brings the transaction within the first clause of § 2 of St. 1890, c. 437. But that is a mistake. Where a broker is employed to buy and carry stocks on a margin, his relation to the customer in buying the stock is that of an agent. For the purchase of the stock the broker receives the same commission, and in the purchase of the stock he owes to his customer the same duty, that he owes to him, where he is employed to buy stocks, which are to be taken and paid for by the customer in place of being taken and paid for by the broker for the customer. The fact that after the stocks have been bought by the broker he is to actually receive them from the seller and to pay for them, for the most part out of his own pocket or with funds raised on his personal responsibility and the pledge of the stocks, and then carry them for his customer so long as his customer keeps him indemnified from loss by keeping the margin agreed upon good, and that in so carrying the stocks the relation between the customer and the broker is a contractual one, does not make the transaction a wagering transaction, and such a transaction is not within either clause of St. 1890, c. 437, § 2.

The authority of a broker to treat as his own the shares of stocks, which he has bought for a customer to be carried on a margin, is like that of a factor to mingle the proceeds of sales of the goods of several principals and to substitute his credit for those proceeds. *Vail* v. *Durant*, 7 Allen, 408. *Commonwealth* v. *Stearns*, 2 Met. 343. *Commonwealth* v. *Libbey*, 11 Met. 64. In both cases the authority is derived from the necessities of the business of the agent. In case of the broker carrying stocks on a margin, he has to raise the money to pay for them and is at liberty in doing so to pledge the securities, which are to be carried and, so long as he is solvent, to pledge them *en bloc* with other securities for the payment of money borrowed by him in his own name.

The contract which the statute refers to, when it provides that the securities are to be actually received and delivered, is the contract to buy, not the contract to carry. The contract to carry is actually performed where the securities are actually delivered to a purchaser under an order to sell from the customer; and that contract is no more actually performed, when the securities are eventually paid for by the customer and delivered to him, than when they are eventually delivered to a purchaser from the principal acting by his agent, the broker.

In the case at bar, the plaintiff has admitted that the defendant was employed by him to buy the securities here in question, and he testified that he understood that the defendant actually bought the securities and held them for him and understood that they were to be actually sold on his order and the transaction closed out in that way. Such a transaction is not a wagering transaction and is not within either clause of § 2 of St. 1890, c. 437; it is not within the first clause because it is a case where the plaintiff did not buy of the defendant, but where he employed the defendant to buy; it is not within the second clause, because the plaintiff understood that the securities were to be actually bought by the defendant and actually sold by him when he was directed so to do.

In *Davy* v. *Bangs*, 174 Mass. 238, this construction of the statute was practically adopted by the judge who presided at the trial. Since the case at bar was submitted to this court, that ruling has been followed by the Supreme Court of Rhode

Island in a careful opinion in which the cases as to wagering contracts and as to the validity of contracts to carry stocks on a margin are collected. *Winward* v. *Lincoln*, 23 R. I. 476. See also St. 1901, c. 459, amending St. 1890, c. 437.

The plaintiff is also wrong in his contention that he made out a *prima facie* case here under § 4 by showing that a settlement was made without actual delivery and receipt of the securities bought. This case comes within the second clause of § 2, and in such a case the question under § 4 is whether a settlement was had without the securities having been actually sold and delivered, which the plaintiff had ordered the defendant to buy in his behalf. The defendant testified that he sold the stock on the plaintiff's orders and the settlement was made as the result of that sale. This imports that the securities were actually delivered by him through his agents, Lee, Higginson and Company. This fact was not further gone into; and it must be taken that the stocks were delivered in pursuance of the sale. No *prima facie* case, therefore, was made out under § 4. In this connection also see St. 1901, c. 459.

*Exceptions sustained.*