Louis Post *vs.* A. S. Leland & another.

Suffolk. November 16, 1903. — January 7, 1904.

Present: Knowlton, C. J., Morton, Lathrop, Barker, & Braley, JJ.

*Evidence,* Best and secondary, Competency. *Practice, Civil,* Exceptions. *Wager-ing Contracts.*

It is proper to exclude secondary evidence of the contents of letters offered by a plaintiff who has testified that they were written to him by the defendant, and who successively has testified that the letters " might be lost, he did not know ", that he had not any letters and that " we did not bring the letters here ", and where there has been no attempt to show that any search was made for the letters or that they were lost.

In an action under St. 1890, c. 437, for money paid on wagering contracts, a plaintiff cannot be allowed to testify that when he received a notice from the defendants stating that they had " bought" certain stock on his account he did not understand what was meant.

The exclusion of evidence on the direct examination of a witness is no ground for exception if the evidence thus excluded was brought out later on his cross-examination.

In an action against a broker under St. 1890, c. 437, § 2, for money paid on margins, where it appeared that the defendant actually bought the stocks, received certificates for them and carried them for the plaintiff, although the certificates were not delivered to the plaintiff but were held by the defendant until they were sold for the benefit of the plaintiff, an instruction, that the plaintiff must show, by a fair preponderance of the evidence, that in his employment of the defendant he did not intend to have him buy any stock or sell any stock and that the defendant had reasonable cause to believe that the plaintiff did not intend to have him buy any stock or sell any stock, was held to be sufficient without using the language requested by the plaintiff.

In an action against a broker under St. 1890, c. 437, § 2, for money paid on margins, the fact that the defendant actually purchased the stock at the request of the plaintiff, and held it subject to his own control until his lien was paid, properly may be considered by the jury upon the question whether the defendant had reasonable cause to believe that the plaintiff was carrying on a wagering contract.

In an action against a broker under St. 1890, c. 437, § 2, for money paid on margins, the reading by the judge to the jury of an extract from the opinion of the court in *Rice* v. *Winslow,* 180 Mass. 500, 502, was approved as being a correct statement of the law which illustrated one phase of the case on trial.

Where one employs a broker to buy and sell stocks for him, and the broker actually buys the stocks with his own money and receives the certificates for them, and later the stocks are actually sold upon the order of the customer or under authority given by him, there is no wagering contract under St. 1890, c. 437, § 2, although the transactions are conducted without actual delivery of the certificates of stock to the customer.

CONTRACT, under St. 1890, c. 437, for money alleged to have been paid on wagering contracts. Writ dated December 15, 1899.

At the trial in the Superior Court before *Bond,* J., the jury returned a verdict for the defendants; and the plaintiff alleged exceptions.

*E. H. Savary,* for the plaintiff.

*B. L. M. Tower,* (*E. O. Hiler* with him,) for the defendants.

LATHROP, J. This is an action of contract under the St. of 1890, c. 437, against brokers, to recover various sums of money paid by the plaintiff to the defendants as margin for the purchase of certain securities bought and afterwards sold by the defendants. The case was sent to an auditor, who found for the defendants. It was afterwards tried in the Superior Court before a jury. A verdict was returned for the defendants, and the case is before us on the plaintiff's exceptions to the exclusion of evidence, and to the refusal to give certain instructions requested. We will consider these in their order.

1. The first exception relates to the refusal of the judge to admit secondary evidence of the contents of letters from the defendants to the plaintiff. The plaintiff testified in the first place that he had received letters, but that they might be lost, he did not know. Then he testified that he had not any letters, which he subsequently qualified by saying: " We did not bring the letters here." There was no attempt to show that any search had been made for the letters or that they were lost, and the judge rightly excluded secondary evidence of their contents.

2. The plaintiff offered to show that when he received a notice from the defendants stating that they had " bought" certain stock on his account he did not understand what was meant. This evidence was rightly excluded. *Snell* v. *Snow,* 13 Met. 278, 282. But, if any error was committed, the plaintiff was not harmed by the exclusion of the evidence, as he subsequently testified on cross-examination that at the time he received the notice he could speak and write English only a little, and did not understand the notice at the time he received it. The exclusion of evidence at one stage of a trial is no ground of exception if it is subsequently admitted. *Robinson* v. *Fitchburg & Worcester Railroad,* 7 Gray, 92, 96. *Hopkins* v. *Damon,* 138 Mass. 65.

3. The next exception relates to the exclusion by the judge of the answers, in whole or in part, to certain interrogatories put to one Berrenberg, whose deposition was taken by the plaintiff. It appeared that the witness was with the plaintiff several times when he visited the defendants in regard to the transactions in question. The answers to the 6th and 7th interrogatories were excluded. The last part of the answer to interrogatory 8, and the answers to interrogatories 13, 14 and 15 were also excluded. In his answer to the 5th interrogatory, which called for conversations between the plaintiff and the defendants or either of them, between the spring of 1893 and the late fall of 1894, the witness replied: " I overheard quite a number of conversations, but cannot recall particulars." So far as the answers to interrogatories 6, 7, 8, 14 and 15 are concerned, they were irresponsive and were properly excluded.

4. The fourth exception relates to the exclusion of two letters written by the defendants to the plaintiff's wife, relating to another transaction between her and the defendants. These were properly excluded.

5. The bill of exceptions states that at the close of the evidence the plaintiff asked the judge to instruct the jury as follows: " (1) The plaintiff can recover if he proves by a fair preponderance of evidence that he did not intend to perform the contract in question by the actual receipt and delivery of the securities and commodities, and the payment of the price either by the receipt and delivery himself, or by the defendants as his agents, of the securities and commodities, and the defendant had reasonable cause to believe that no intention so actually to perform existed." " (2) If the plaintiff had no intention at the time of the various contracts for the buying or sale of the various securities to actually perform the same by actual receipt or delivery of the securities and the payment of the price, and the defendants had reasonable cause to believe no intentions to actually perform existed, the mere fact that the defendants may have owned or controlled the various securities which were the subject matter of the various contracts, or that there was a buying or sale of the various securities by the defendants with other brokers will not relieve the defendants from liability, or the mere fact that the defendants were in a position to deliver the various securities, if they had been called for by the plaintiff."

The judge declined to give these instructions.

As to the first request for instructions, the evidence showed that the case, if it was within the St. of 1890, c. 437, fell within the second clause of § 2, as the plaintiff employed the defendants to buy stocks for him upon a margin, and that the defendants actually bought the stocks, received certificates for them and carried them for the plaintiff, though these certificates were not delivered to the plaintiff, but were held by the defendants until they were sold for the benefit of the plaintiff. The judge was not bound to give the request in the language therein used, and the instruction given that the plaintiff must show, by a fair preponderance of the evidence, that in his employment of the defendants he did not intend to have them buy any stock or sell any stock, and that the defendants had reasonable cause to believe that the plaintiff did not intend to have them buy any stock or sell any stock was sufficient. See *Rice* v. *Winslow*, 180 Mass. 500.

The second request for instructions, if given, would have tended to mislead the jury. The fact that the broker has actually purchased the stock at the request of his customer, and holds it subject to his control until his lien is paid, is an element bearing upon the question of whether the broker has reasonable cause to believe that the customer is carrying on a wagering contract.

6. Some exceptions were taken to portions of the judge's charge, but we see nothing in them which calls for comment. The charge was an able one, and fully covered the questions raised.

7. The plaintiff excepted to the reading by the judge to the jury of the following extract from the opinion of the court in *Rice* v. *Winslow*, 180 Mass. 500, 502 : " Where a broker is employed to buy and carry stocks on a margin, his relation to the customer in buying the stock is that of an agent. For the purchase of the stock the broker receives the same commission, and in the purchase of the stock he owes to his customer the same duty, that he owes to him, where he is employed to buy stocks, which are to be taken and paid for by the customer in place of being taken and paid for by the broker for the customer. The fact that after the stocks have been bought by the broker he is to actually receive them from the seller and to pay for them, for

the most part out of his own pocket or with funds raised on his personal responsibility and the pledge of the stocks, and then carry them for his customer so long as his customer keeps him indemnified from loss by keeping the margin agreed upon good, and that in so carrying the stocks the relation between the customer and the broker is a contractual one, does not make the transaction a wagering transaction, and such a transaction is not within either clause of St. 1890, c. 437, § 2."

We see no objection to this. It is a correct statement of law, and illustrated one phase of the case before us.

8. The last exception relates to the refusal of the judge to give the following request for instructions asked for by the plaintiff at the close of the charge: " That as to whether the stock certificates were delivered or received by the plaintiff might be taken into consideration by the jury as bearing on the question whether the plaintiff intended the defendants or either of them to carry the stock for him and as to whether there was reasonable ground for the defendants to believe this."

We are of opinion that the refusal to give this instruction was right. It was entirely immaterial whether the plaintiff intended that the defendants, or either of them, should carry the stocks for him, or whether the defendants had reasonable ground to believe this. There was evidence in the case showing that the plaintiff employed the defendants as brokers to buy and sell stocks for him, and that the brokers actually bought the stocks with their own money, and received certificates for them, and that the stocks were actually sold upon the order of the plaintiff or under authority given by him. If the jury found that the facts were in accordance with this evidence, there was no wagering contract, but a legitimate transaction, although settlements were made without actual delivery of the certificates of stock to the plaintiff, and the case was not within the St. of 1890, c. 437. *Rice* v. *Winslow,* 180 Mass. 500. *Winward* v. *Lincoln,* 23 R. I. 476.

*Exceptions overruled.*