### LOUIS ZEMBLER *vs.* WILLIAM F. FITZGERALD & others.

Suffolk. October 23, 1919. — December 4, 1919.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Wagering Contracts. Stockbroker. Evidence,* Presumptions and burden of proof. *Practice, Civil,* Auditor. *Election. Estoppel.*

The provisions of R. L. c. 99, § 4, do not apply to actual purchases and sales of shares of stock by a stockbroker who carries them on margin for his customer.

In order for a contract relating to the purchase or sale of a security or commodity by a customer to come within the provisions of R. L. c. 99, § 4, there must be an intention on the part of the customer that there shall be no actual purchase or sale by the broker on his behalf and reasonable cause for the broker to believe that such intention exists.

Where, in an action under R. L. c. 99, § 4, against a stockbroker by a customer to recover amounts paid to the defendant in transactions relating to securities alleged to come within the statute, it appears that the plaintiff expected, each time he gave an order to the defendant to buy a security, that the defendant would execute the order and actually purchase the security in accordance with the rules of the stock exchanges, and that, whenever he gave an order to sell, the defendant would sell the stock as directed, judgment must be entered for the defendant, because it does not appear that the plaintiff intended that there should be no actual purchase or sale of the securities.

Transactions between a stockbroker and his customer, in which the customer intended that orders given by him to the stockbroker should be carried out by actual purchases and sales between the stockbroker and those from whom he bought and to whom he sold, are not brought within the description of wagering contracts in R. L. c. 99, § 4, by the fact that, as between the customer and the stockbroker, it was not intended that the customer should receive from or deliver to the stockbroker the securities which were the subjects of the purchases and sales.

A customer of a stockbroker, who pays money to the stockbroker in transactions as to the purchase and sale of securities in which he intends that there shall be no actual deliveries of securities as between himself and the stockbroker and that the transaction shall be carried on margin, settlements between them to be by the payments of balances of accounts, ordered the stockbroker to sell a certain security which he knew that he did not then own and, the next day, ordered him to buy the same kind of security to take the place of what he had ordered sold the previous day. The sales slips given to the stockbroker

contained provisions that actual purchases and sales were contemplated and that, if the customer did not make delivery of the security in time for the stockbroker to comply with the rule of the stock exchange relating to delivery, the stockbroker was empowered to make delivery for the customer's account, the securities to be loaned by the stockbroker to the customer for that purpose and to be returned to the stockbroker on demand. The customer read these provisions and agreed to them. In an action by the customer against the stockbroker under R. L. c. 99, § 4, it was *held,* that the foregoing facts were not inconsistent with a finding that the customer intended that actual purchases and sales should be carried out by the stockbroker on his behalf in the transactions in question.

In an action against a stockbroker by a customer under R. L. c. 99, § 4, where it appears that the parties contemplated actual purchases and sales between the stockbroker and those with whom he carried out the customer's orders, it is immaterial that the stockbroker did not set apart for the customer the specific shares of stock which he purchased for him.

Although, by the provisions of R. L. c. 99, § 6, in an action against a stockbroker by a customer under § 4, the facts that, when the customer ordered the stockbroker to sell a certain security, he did not own that security, and that settlements were made between the parties without the completion of the sale, are *prima facie* evidence that at the time of the transaction the customer intended that there should be no actual sale made by the broker on his behalf, they are not conclusive evidence to that effect, and, where there is evidence of a contrary import, the statute does not preclude as a matter of law a finding, based upon all the evidence, that such intention did not exist.

Rulings of law contained in a report of an auditor, to whom was referred an action of contract, are not properly a part of the report, and the report should be dealt with, in a subsequent trial of the action, only upon its recital as to facts.

An action of contract against a stockbroker by a customer was upon an account annexed stating items of cash paid and securities delivered by the customer to the stockbroker. The action was referred to an auditor, who found, among other things, that the parties had intended that the defendant should make actual purchases and sales of commodities on orders by the plaintiff, and that no deliveries were made between the parties, the transactions between them being carried on margin with settlements of balances in cash. *Held,* that the action could not be maintained at common law because it did not appear that actual purchases and sales were not made by the defendant.

The action above described was tried before the auditor upon the understanding that it was an action under R. L. c. 99, § 4, and the auditor in his report found that it was such an action and stated as the issues between the parties contentions which related solely to the statutory provisions. He ruled, erroneously, that the defendant had not made out the statutory defence under R. L. c. 99, § 4, that he had made actual purchases and sales. The action was heard by a judge without a jury upon the auditor's report only. *Held,* that the plaintiff was precluded in this court from seeking recovery at common law.

CONTRACT against a firm of stockbrokers upon an account annexed. Writ dated March 16, 1918.

The account annexed to the declaration was as follows:

"Fitzgerald, Hubbard & Co.
                    to
                    Louis Zembler, Dr.

| | | | | | |
|---|---|---|---|---|---|
| **1916** | | | | | |
| Item 1. | Feb. | 23 | To Cash paid | | $2000.00 |
| " 2. | July | 11 | " 15 Am. Zinc, pref. delivered | | 918.55 |
| " 3. | Oct. | 20 | " Cash paid | | 472.01 |
| **1917** | | | | | |
| " 4 | Feb. | 3 | " " " | | 250.00 |

" 5            Total ..................... $3640.56 " ·

In the Superior Court the action was referred to an auditor. Portions of the auditor's report were as follows:

"The form of the declaration is to recover $3,640.56 according to an account thereto annexed, but the action is based upon the provisions of R. L. c. 99, to recover money paid to or the value of securities deposited with the defendants under contracts for the purchase or sale of stocks upon margin, the plaintiff contending that at the time he made the contracts he intended that the same should not be completed by the receipt or delivery of any of the certificates of stock and that the defendants had reasonable cause to believe that such intention existed. For answer the defendants set up a general denial and plea of payment and the further answer that they made an actual purchase or sale of each and every share of stock which they were directed by the plaintiff to purchase or sell. . . .

"Except as to the stocks delivered to Milliken and Company . . . at no time did the defendants ever tender to him [the plaintiff] or request him to receive any of the shares for which he had given orders to buy, nor did he at any time tender to the defendants the full purchase price of the stock which he had ordered to be bought, but as between the plaintiff and the defendants, all transactions, except the stocks delivered to Milliken and Company were completed by a settlement of differences between the purchase prices and the selling prices, which prices were charged against or credited to the account of the plaintiff, commissions on purchases being added and taxes and commissions on sales being deducted and only the net amount of the purchases and sales being stated in the account. At no time was anything said

by either party in relation to whether it was the intention of the plaintiff to complete any of the transactions by an actual receipt or delivery of any of the certificates of stock bought or sold. . . .

"Each time when the plaintiff gave an order to sell, except in the two instances above referred to, he had in mind that the defendants were carrying for his account, on margin, stock corresponding to the amounts he was ordering sold, and when giving the orders to sell in those two instances he did not inform the employees of the defendants that he was selling 'short.' . . .

"The plaintiff intended that each time when he gave an order to buy, the defendants would carry out his order and buy the stocks ordered to be bought in accordance with the rules of the stock exchanges, and that when he gave orders to sell (except in the two instances before referred to [the 'Butte & Superior' and 'Pittsburg Coal' transactions described in the opinion]) he understood that the defendants were carrying for his account, on margin, the stocks which he ordered to be sold, and in all instances in which he gave orders to sell, he intended that the defendants should sell the stocks which he ordered them to sell.

"The manner in which the transactions between the plaintiff and the defendants were carried on is indicatory of the intention of the plaintiff. At the time he opened his account he stated that he desired to buy and sell on margin and made a deposit of money for that purpose. His orders to buy were in the majority of instances followed within a few days by corresponding orders to sell, and in the two instances of 'short' sales there were on the following days orders to buy. He never demanded that any of the stock be delivered to him, and all of his transactions except those wherein the stocks were delivered to Milliken and Company were settled upon the differences resulting from the charging or crediting of purchasing and selling prices, commissions, taxes, etc., as hereinbefore recited. I find that at the times when he gave the orders to buy, the plaintiff intended that he should not receive from the defendants any of the stocks which he ordered to be bought, but intended that the defendants should buy and carry them for his account, on margin, until such time as he might order them to be sold, and that in giving his orders to sell (except in the two instances of 'short' sales before referred to) he intended that the defendants should sell stocks which they were carrying

for his account, on margin, without his having paid the full purchase price therefor or having received the certificates, and to settle with the defendants by receiving or paying the difference between the purchase and selling prices of the stocks ordered to be bought or sold and paying taxes, commissions and interest, and that, as between himself and the defendants, there should be no actual purchase or sale of any of the stocks for which he gave the orders for purchase or sale.

"I further find, from the manner in which the transactions were conducted, that the defendants had reason to believe that the plaintiff did not intend to receive from them any of the stocks which he ordered to be purchased or to deliver to them any of the stocks which he ordered to be sold, and that as between the plaintiff and the defendants there should be no actual purchases or sales.

"Upon the issue whether the defendants have made actual purchases or sales of the stocks as set up in their answer, it appeared, as hereinbefore set forth, that in some of the transactions, the defendants received certificates from the sellers for the same number of shares as were purchased for the account of the plaintiff, but, in other transactions, the deliveries were made through settlements and in such a manner that it could not be determined whether the certificates received were for the account of the plaintiff or for other customers for whom they had made purchases on the same day. . . .

"Upon the specific facts hereinbefore set forth, I ruled that in the instances in which the defendants received from the sellers, certificates for the exact number of shares which were ordered to be bought, and in the instances in which they received certificates for a larger number of shares than were ordered to be bought, from the exchange of which they subsequently received smaller certificates for the number bought, the affirmative defence was sustained, but that in respect to the transactions in which the deliveries were made through the clearing house and in the purchases which were made through the New York brokers, the affirmative defence was not sustained. I further ruled that in the instances of sales in which the defendants delivered to the purchasers, certificates for the number of shares which the plaintiff ordered to be sold, and that in all of the sales made by the New

York brokers, the affirmative defence was sustained, but that in respect to the sales in which deliveries were made to persons other than those to whom the sales were made and the sales in which the deliveries were made through the clearing house, the affirmative defence was not sustained.

"I further ruled that in order to sustain the affirmative defence set up in their answer, the defendants must show that they had made actual purchases of each and all of the securities which the plaintiff directed them to make and actual sales of each and all of the securities which he directed them to sell, and that upon the specific findings of fact herein recited and the rulings of law hereinbefore made, they had failed to sustain the burden of proof necessary to a finding that they had established that affirmative defence. . . .

"Upon the foregoing specific findings of fact, I ruled, as a matter of law, that the transactions between the plaintiff and the defendants, were wagering contracts as defined in the cases of *Fiske* v. *Doucette*, 206 Mass. 275, and *Houghton* v. *Keveney*, 230 Mass. 49, and that the plaintiff is entitled to recover under the provisions of statute. If, however, such ruling is incorrect, the plaintiff is not entitled to recover. . . ."

Other material facts found by the auditor are described in the opinion.

After the filing of the auditor's report, the plaintiff moved under Rule 31 of the Superior Court (1915) for entry of judgment according to the report. The motion was heard by *Jenney*, J., who ordered judgment for the defendants and reported the case for determination by this court, judgment to be entered for the defendants if his ruling was right; otherwise, such judgment to be entered as the court should determine.

R. L. c. 99, §§ 4, 6, are as follows:

"Section 4. Whoever upon credit or upon margin contracts to buy or sell, or employs another to buy or sell for his account, any securities or commodities, intending at the time that there shall be no actual purchase or sale, may sue for and recover in an action of contract from the other party to the contract, or from the person so employed, any payment made, or the value of anything delivered, on account thereof, if such other party to the contract or person so employed had reasonable cause to believe that said in-

tention existed; but no person shall have a right of action under the provisions of this section if, for his account, such other party to the contract or the person so employed makes, in accordance with the terms of the contract or employment, personally or by agent, an actual purchase or sale of said securities or commodities, or a valid contract therefor."

"Section 6. In a proceeding under the provisions of the two preceding sections, the fact that the seller or the person employing another to sell for his account did not own the securities or commodities at the time of the contract of sale or at the time of the giving of the order to sell, and the fact that settlements were made without the completion of the purchase or sale of the securities and commodities bought or sold or ordered to be bought or sold, shall each be *prima facie* evidence that within the meaning of section four there was no intention that there should be no actual purchase or sale, and that there was reasonable cause to believe that said intention existed; and the parties liable to an action under the provisions of said section shall be jointly and severally liable."

*W. R. Bigelow,* for the plaintiff.

*F. L. Simpson,* for the defendants.

CARROLL, J. The plaintiff employed the defendants, who are stockbrokers, to buy and sell stock on margin. The contract was made February 23, 1916, when the plaintiff deposited $2,000 and received from the defendants a receipt "Subject to marginal conditions hereon," to the effect that the amount received was to be used by the defendants as margin or collateral security to protect them from losses in their transactions with the plaintiff; and that they were authorized to sell all the stocks, bonds or other property held by them for the plaintiff's account, at private or public sale, if the amount paid were insufficient to protect them from loss. In the Superior Court the case was heard on the auditor's report. Judgment was ordered for the defendants and the case reported to the Supreme Judicial Court.

Between February 23, 1916, and February 16, 1917, the plaintiff ordered the defendants to sell or purchase for his account shares of stock of different corporations. In October of 1917 the defendants, at the plaintiff's request, delivered to F. H. Milliken and Company twenty shares of Alaska, twenty shares of Isle Royal, thirty shares of Massachusetts Consolidated, thirty shares of

North Butte and twenty shares of Utah Consolidated (which were all the securities then held for the plaintiff's account), and received from F. H. Milliken and Company the amount of the plaintiff's indebtedness. At no other time did the defendants ·deliver or tender to the plaintiff or his agent the stocks purchased by them in accordance with his order.

When an order was given to buy or sell, the defendants mailed to the plaintiff a "bought" or "sold" slip confirming the transaction. On each of these sale slips there was printed "All orders for the Purchase or Sale of any security are received and executed with the distinct understanding that an actual purchase or sale is contemplated, and that you so understand and agree;" and "in the event of your not making delivery of the securities sold, in time for us to comply with the rule for delivery of securities in the Exchange in which the same have been sold, we are hereby empowered to make delivery of the same for your account, the said securities to be loaned by us to you for the foregoing purpose and to be returned to us on demand." Upon each of the slips confirming purchases there appeared the printed statement that "All orders for the Purchase or Sale of any security are received and executed with the distinct understanding that an actual purchase or sale is contemplated," and the further statement, "It is agreed that all securities from time to time carried in your marginal account, or deposited to protect the same, may be loaned or may be pledged by us, either separately or together with other securities, either for the sum due thereon or for a greater sum, all without further notice to you." On the first of each month, beginning April 1, 1916, the defendants sent to the plaintiff a statement of his account, showing purchases and sales, with the prices, amounts, interest charges and balances. The plaintiff admitted that he read all the printed matter appearing upon the confirmation slips and agreed to all the recitals contained therein.

On April 25, 1916, the plaintiff gave an order to sell forty shares of Butte and Superior. None of this stock was then held by the defendants for his account. The following day he gave an order to buy forty shares. This was to protect the order to sell, the plaintiff admitting that the stock bought was to replace that sold. On November 27, 1916, he ordered the defendants to sell twenty shares of Pittsburg Coal. They were then carrying for his ac-

count ten shares of this stock. The following day he gave an order to buy twenty shares of Pittsburg Coal, which, according to the finding of the auditor, was to cover the ten shares ordered to be sold "beyond the amount which the defendants carried for his account." Except in these two instances, whenever the plaintiff gave an order to sell, he understood that the defendants were carrying for his account on margin the shares which he ordered sold. Whenever an order was given to buy, he expected that the defendants would carry out his order by the purchase of shares in accordance with the rules of the stock exchange; and whenever an order was given to sell, he intended the defendants should make an actual sale. It was found by the auditor that when the plaintiff opened the account he stated he intended to buy and sell on margin.

R. L. c. 99, § 4, provides, so far as material, that whoever employs another to buy or sell for his account any securities, intending at the time that there shall be no actual purchase or sale, may recover in an action of contract from the person employed any payment made if the person so employed had reasonable cause to believe that said intention existed; but that there shall be no right of action if in accordance with the terms of the employment an actual purchase or sale of the securities or a valid contract therefor is made. By § 6 of this statute, if the person employing another to sell for his account did not own the securities at the time and settlements were made without the completion of the purchase or sale, these facts shall be *prima facie* evidence within the meaning of § 4 that it was intended no actual sales or purchases should be made and there was reasonable cause to believe said intention existed.

The purchase and sale of stocks by a broker who carries them on margin for his customer are not prohibited by this statute. Unless the person employing the broker meant there should be no actual sales or purchases and the broker had reasonable cause to believe that such was the case, the statute is not transgressed. *Rice* v. *Winslow*, 180 Mass. 500. It is not the unrevealed intention of the plaintiff that is to be proved, but his purpose as appears by the transaction, the acts accompanying it, the means employed, and by all the other circumstances competent as evidence to show his intention and its disclosure to the defendant. See *Marks* v. *Metropolitan Stock Exchange*, 181 Mass. 251, 254;

*Anderson* v. *Metropolitan Stock Exchange,* 191 Mass. 117, 122. Unless it appears that the plaintiff intended that a real transaction should not take place by the actual purchase and sale of securities, his case, under the statute, fails. The plaintiff did not show he contemplated there should be no actual sales or purchases by the defendants: the auditor expressly finds as a fact upon all the evidence that the plaintiff expected each time he gave an order to buy that the defendants would execute his order and actually purchase the stocks in accordance with the rules of the stock exchange; and whenever he gave an order to sell that the defendants would sell the stocks as directed. Such transactions are not wagering ones, and are not forbidden by the statute. R. L. c. 99, §§ 4, 6. *Rice* v. *Winslow, supra. Post* v. *Leland,* 184 Mass. 601, 604, 605.

The meaning and the effect of this finding are not diminished by the findings that the defendants had reason to believe the plaintiff did not intend to receive from them or to deliver to them the stocks which he directed them to purchase or to sell; and that between these parties there should be no actual sales or purchases. It is immaterial that between the plaintiff and the defendants there were to be no deliveries. *Rice* v. *Winslow, supra. Post* v. *Leland, supra.* The statute refers to the plaintiff's intention — that intention relates solely to sales and purchases to be made by the defendants, and if the plaintiff intended that actual sales and purchases were to be executed between the defendants and those from whom they bought and to whom they sold, the statute does not give the plaintiff a remedy.

In each of the two instances when the forty shares of Butte and Superior and the twenty shares of Pittsburg Coal were ordered to be sold by the plaintiff, on the following day orders were given by him to buy a like amount to take their place. The slips confirming the sales contained the provision that if delivery was not made by the plaintiff the defendants were authorized to make delivery for his account and to loan the securities for this purpose. The plaintiff read these conditions; he gave no notice that they were adverse to his contract and he testified that he agreed to them. This finding is not inconsistent with the finding that he intended actual sales and purchases should be made, and as he failed to show that the transaction was a wagering contract, under the statute he cannot recover. See *Chandler* v. *Prince,* 221 Mass. 495.

As it was contemplated that there should be actual purchases and sales of the stock, as found by the auditor, it is immaterial that the defendants did not set apart for the plaintiff the specific shares bought for him. See *Davy* v. *Bangs*, 174 Mass. 238; *Chase* v. *Boston*, 180 Mass. 458, 460; *Rice* v. *Winslow, supra*.

Under § 6 of the statute, the fact that the plaintiff did not own the securities at the time of the contract of sale or when the order to sell was given, and the fact that settlements were made without completion of the purchase or sale, each was *prima facie* evidence that he meant that there were to be no genuine transactions by the defendants and that there was reasonable cause so to believe. The acts which are evidence for the plaintiff under this section are admissible for the purpose of showing that he intended no actual sales or purchases should be made for his account, and that the defendants had reason to believe such intention existed. These acts are not conclusive, but merely *prima facie* evidence, and cannot be relied on to establish as matter of law a decisive intention that genuine sales or purchases should not be effected, when, notwithstanding the *prima facie* nature of the evidence it has been found as a fact that the plaintiff did intend that these sales and purchases should be really made. Where the positive intention has been found to be present that actual sales and purchases are to be executed, it is not necessarily overcome as matter of law by the presumption which arises from the fact that the plaintiff did not at the time own the stocks in question and settlements were made without the completion of the transaction. The general finding that upon all the evidence it was intended there should be actual sales and purchases, includes the finding of all the facts essential to that conclusion; it is therefore unnecessary to inquire whether the special facts found were sufficient to make out a *prima facie* case showing that it was intended there should be no real sales or purchases, or that there was reasonable cause to believe said intention existed. See *Emmons* v. *Westfield Bank,* 97 Mass. 230; *Chandler* v. *Prince*, 217 Mass. 451, 455.

*Houghton* v. *Keveney*, 230 Mass. 49, is to be distinguished. In that case, when the broker was instructed to buy or sell shares of stock, the plaintiff had no intention that the defendant should or should not carry out the order by making actual purchases or sales. The plaintiff did not own the securities ordered to be sold

and settlements were made without the completion of the sale or purchase. It was held that these transactions showed the positive intention that there should be no sales or purchases on the plaintiff's order. In the case at bar, the positive intention that the plaintiff's order should be executed by sales or purchases was found as a fact. In *Fiske* v. *Doucette,* 206 Mass. 275, the master found that the plaintiff had an affirmative intention that actual sales and purchases should not be made and that the defendant had reasonable cause to believe this. The burden was upon the defendant to show that actual sales and purchases were made; he failed before the master to establish this fact, and it was held by this court that the defence was not made out. There is nothing in *Adams* v. *Dick,* 226 Mass. 46, in conflict with what is here decided. In that case, in the general finding for the plaintiff there was included the finding that he intended there should be no actual purchase or sale on his order, and it was decided that this conclusion was not inconsistent with the finding that the plaintiff did not contemplate when he made the contract that the defendant should receive from or deliver to any one else the stocks ordered to be bought or sold. "This is not a finding that there was a negative lack of intention by the plaintiff upon the vital point that there should be 'no actual purchase or sale' on his orders. It relates to the different subject of delivery and receipt of certificates." The fundamental difference between that case and the case at bar, is a difference in the findings of fact made in the two cases.

The plaintiff also contends that he meant that actual sales and purchases should be made and employed the defendants to carry out his orders; that they failed to do so and that he can recover at common law under *Greene* v. *Corey,* 210 Mass. 536. Without considering all the objections which might be urged against this contention, it is enough to say that the auditor's report does not show it was determined as a question of fact that actual purchases and sales were not made by the defendants. The auditor found certain facts and upon them ruled, as matter of law, that the affirmative defence under the statute was not made out. He was then considering the defence afforded the defendants by the statute. His rulings of law were not strictly a part of the report, which must be considered only on the facts found by him. *Fisher* v. *Doe,* 204 Mass. 34, 39, 40. Moreover, the trial before the

auditor appears to have proceeded wholly upon the theory that the action was based on R. L. c. 99, §§ 4 and 6.

The Superior Court was right in ordering judgment for the defendants.

As the plaintiff cannot recover, we find it unnecessary to discuss the relevancy of St. 1919, c. 247.

*Judgment for the defendants.*