GEORGE MARSHALL *vs.* J. R. WILLISTON & others.

Suffolk.    January 27, 1926. — May 28, 1926.

Present: PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Wagering Contract.  Stockbroker.  Evidence,* Presumptions and burden of proof.

At the hearing by an auditor of an action against a firm of stockbrokers under G. L. c. 137, §§ 4–6, it is proper to permit the plaintiff to be asked in cross-examination with relation to a certain security he had ordered the defendants to sell, "And you expected they would sell it?" and testimony by him in answer thereto was *held* to warrant a finding by the auditor that the plaintiff "intended that the defendants should execute and fill his order on . . . [the New York] exchange by making actual sales and purchases of the stocks to be dealt in."

Where the auditor who heard the action above described found that the plaintiff "intended that defendants should execute and fill his order on . . . [the New York] exchange by making actual sales and purchases of the stocks to be dealt in" and that "defendants did not have reasonable cause to believe that plaintiff intended that there should be no actual sales or purchases, with deliveries of certificates, made on his account," and the action afterwards is heard by a judge without a jury upon the auditor's report only, it is proper for the judge to deny a motion for a finding for the plaintiff and to allow a motion for a finding for the defendants, although the auditor also found "that plaintiff

intended that defendants should make for him 'short' sales, . . . that, not at the outset but during the course of the transactions, defendants had reasonable cause to believe that the sales ordered by plaintiff were intended to be 'short' sales, but that such sales, with deliveries of the certificates therefor, should be actually made by them by virtue of said margin contract."

CONTRACT. Writ dated March 24, 1919.

Proceedings in the Superior Court and findings by the auditor and rulings by the judge are described in the opinion. The hearing in the Superior Court was by *Flynn*, J., without a jury. He found for the defendants. The plaintiff alleged exceptions.

*W. R. Bigelow*, for the plaintiff.

*H. W. Beal*, for the defendants.

PIERCE, J. This is an action of contract under R. L. c. 99, §§ 4–7, now G. L. c. 137, §§ 4–6, to recover payments alleged to have been made on wagering transactions in the year 1916. The writ is dated March 24, 1919. An auditor was appointed by the Superior Court, presumably under St. 1914, c. 576, § 2, now G. L. c. 221, § 56. The case was heard by that court without a jury, upon the auditor's report and without other evidence. The plaintiff made a motion in writing that upon all the evidence a finding be ordered for the plaintiff for the amount claimed in the declaration, with interest from the date of the writ. He also made twenty requests for rulings. The defendant made a motion in writing that upon the pleadings and the evidence the defendants were entitled to a finding. "The court denied the plaintiff's motion for a finding, and granted the defendants' motion . . . and with reference to the plaintiff's requests for rulings made the following ruling, — The within requests are denied because immaterial in view of the findings of the auditor." The plaintiff duly excepted to the denial of his motion, to the granting of the defendants' motion, and to the refusal of the plaintiff's requests.

The witnesses before the auditor were the plaintiff, a defendant, Walter L. Dodge (a former clerk of the defendants), and Joseph J. Heard. There were numerous exhibits. The plaintiff testified at the outset that he had previously traded

in stocks at two other brokerage offices; that he knew the defendants were members of the New York Stock Exchange; that in July, 1916, he met Dodge in the Boston office of the defendants, where stocks were dealt in, and said to him, "'I want to sell Steel short,' and asked him how much margin was required"; that Dodge said $500, and he then ordered Dodge to sell for him twenty shares of United States Steel Company; that he thought he made a deposit of $500 on the day of the conversation; that he dealt in stocks with and through the defendants as a bear; that he never owned or held any certificates of shares of any of the stocks he ordered to be sold or bought and that the defendants never asked him to deliver any certificates to them. Subject to the objection of his attorney, that the plaintiff's "expectation or unrevealed intention . . . was immaterial," Marshall on cross-examination answered the question, "And you expected they would sell it? (Meaning the 20 Steel.)" "I expected they would go through the form of putting it on their books, or whatever else they did." "'I knew they (defendants) were members of the New York Stock Exchange.' . . . 'I stayed in their trading room quite a lot.' . . . 'They would often report that they had sold or bought for me: that they had filled my order.' . . . 'I didn't know where they filled their orders.' 'I knew Studebaker, Industrial Alcohol and Willys Overland were dealt in only on the New York Stock Exchange.' . . . 'I was watching the New York ticker.' . . . 'I understood the formality was gone through with, the trade name, and my transaction completed.' . . . 'I never questioned what Williston & Co. did: they came and told me.' . . . 'I believed my order was taken care of as I ordered.' . . . 'Didn't give my orders in writing.' . . . 'Told him (Dodge) to sell or buy in each instance before he did.' . . . 'Don't remember about getting monthly statements; if I ordered a sale or purchase I received a confirmation notice next day like Exhibit 3.' . . . 'When I gave Dodge an order I could not say whether he wrote it down or would tell it in a window. I saw him talk to a telegraph operator. Fifteen or twenty minutes later he would come back and say, "Your order is filled." I never had a settle-

ment with them. I bought the same number of shares I sold. I did not tell Dodge anything about my owning any shares I ordered him to sell, but simply said I want to sell 10 shares, etc.'"

The auditor found "that, on July 14, 1916, plaintiff paid defendants $500, for which they agreed to sell and buy stocks . . . on the New York (City) Stock Exchange, according to the rules and customs there prevailing, as the plaintiff should from time to time thereafter order them to do, under a margin contract for dealing in stocks. . . . that both parties to the contract knew what such a margin contract was . . . [that] irrespective of any evidence admitted against plaintiff's objections . . . [and] upon the evidence of the acts of plaintiff," the plaintiff expected and intended that the defendants should execute and fill his orders on said exchange by making actual sales and purchases of the stock to be dealt in, including the delivery or receipt of the certificates therefor, according to the custom of brokers, on his account and carrying the same, by virtue of said margin contract, for the use and protection thereunder, and for the benefit of the plaintiff if there should be any net profit accruing from the transaction.

The auditor found "that plaintiff owned no certificates and never delivered any to defendants for the shares of stocks he thereafter ordered them to sell for him, and that he never expected to be called upon to deliver any such certificates, but relied upon defendants to make such deliveries of certificates for him when necessary, according to the custom of dealing on said exchange"; that "defendants did not have reasonable cause to believe that plaintiff intended that there should be no actual sales or purchases, with deliveries of certificates, made on his account"; "that plaintiff intended that defendants should make for him 'short' sales, that is to say — sales for which he personally did not have and did not expect to have certificates to make deliveries therefor"; "that defendants did not know that plaintiff intended that the sales ordered by him should be 'short' sales"; "that, not at the outset but during the course of the transactions, defendants had reasonable cause to believe that

the sales ordered by plaintiff were intended to be 'short' sales, but that such sales, with deliveries of the certificates therefor, should be actually made by them by virtue of said margin contract"; "that all the sales made by defendants under plaintiff's orders were 'short' sales on his part, because he said he was a 'bear' and ordered shares similar in amounts to those sold to be bought to cover said sales"; "that all purchases ordered by plaintiff to be made were so ordered with the intention on his part that they would, in whole or in part, cover (be set off against) said 'short' sales made for him by defendants, so that there should be a profit to him from the proceeds of 'short' sales less the cost of the shares bought to cover such sales"; "that all purchases ordered by plaintiff were actually made by defendants, with receipts of certificates therefor."

The auditor further found that, according to the custom of dealing on said exchange the "defendants had reasonable cause to believe, during the course of the transactions, that the purchases ordered to be made were so ordered by plaintiff with the intention that the cost of them should be less than the proceeds of the shares sold"; "that, at the time of the transactions in question, there was a usage or custom among brokers dealing on said New York Exchange, whereby odd lots of stock, bought or sold, were paid for by 'pairing off' or setting off transactions, as found to have been done in this case; that such 'pairing off' custom was to relieve them from the longer process of exchanging certificates of stock between them for such odd lots, and was considered by them equivalent to the actual manual delivery of the certificates called for by each transaction"; "that defendants were not always in position to have made immediate delivery to plaintiff of certificates for the shares bought for his account under said margin contract"; "that their asset of 'shares due from customers' was probably of doubtful value, especially if such customers were of the limited financial ability and having no certificates of stock as appeared to have been the position of the plaintiff. The evidence . . . did not show from what customers, who had sold 'short' through defendants, certificates were due, or to

what extent such asset was from customers, who could not produce the certificates"; "that, under said margin contract, upon call of defendants for more margin, plaintiff paid them on September 13, 1916, $250." And on all the evidence the auditor found "the plaintiff is not entitled to recover."

The denial of the motion that a finding be ordered for the plaintiff was manifestly right. To recover under R. L. c. 99, §§ 4–7, now G. L. c. 137, §§ 4–6, the plaintiff on the whole case must prove that he employed the defendants on a margin contract to buy or sell for his account securities, intending that there should be no actual purchase or sale by the defendants; as also that the defendants had reasonable cause to believe that said intention existed. To sustain this burden the plaintiff established a *prima facie* case, G. L. c. 137, § 6, by the finding of the auditor that the sales made by the defendant at the direction of the plaintiff were "short" sales; and the plaintiff was entitled to recover unless further findings of the auditor overcame and rebutted the presumption which arose from the fact that the plaintiff did not own the stocks at the time of the contract of sale or at the time of the giving of the order to sell. *Marshall* v. *James*, 252 Mass. 306. *Fisher* v. *Drew*, 247 Mass. 178, 181. *Barrell* v. *Paine*, 242 Mass. 415.

The findings of the auditor in matters of fact are *prima facie* evidence as to matters embraced in the order of appointment. G. L. c. 221, § 56. In the case at bar the auditor expressly found that the plaintiff expected and intended that the defendants should execute and fill his orders on the New York Stock Exchange, and in substance that such was his intention even though he did not intend to complete his sales or purchases, by delivering or receiving in person a certificate therefor; his intention being that the defendants should receive and deliver certificates as his brokers, and that through them he should make actual purchases and sales. *Rice* v. *Winslow*, 180 Mass. 500, 502. *Post* v. *Leland*, 184 Mass. 601, 604, 605.

It is plain the presumption of the statute which attaches to a sale of stock a plaintiff does not own may be rebutted and overcome by evidence which satisfies the trier of fact

that the plaintiff intended there should be actual purchases or sales. *Adams* v. *Hayden*, 236 Mass. 454, 459. *Zembler* v. *Fitzgerald*, 234 Mass. 236, 246. The testimony of the plaintiff above quoted as to his intent, elicited on cross-examination against the objection of his attorney, was properly received and fully warranted the finding of the auditor that the plaintiff "intended that defendants should execute and fill his order on said exchange by making actual sales and purchases of the stocks to be dealt in." *Sherman* v. *Sherman*, 193 Mass. 400. *Carriere* v. *Merrick Lumber Co.* 203 Mass. 322. G. L. c. 221, § 56.

The judge was right in allowing the motion that a finding be ordered for the defendants. The finding that the plaintiff had an intention that there should be actual purchases and sales of securities was not substantially contradicted or affected by evidence outside the report, nor by inconsistent and material findings within the report. *Matthys* v. *Hornblower*, 224 Mass. 248. *Barrell* v. *Paine*, 236 Mass. 157, 163, 164.

If it be a fact that the plaintiff intended there should be actual sales and purchases of the securities, it necessarily follows that the belief of the defendants as to the plaintiff's intention was immaterial, and the rulings requested in that regard were properly refused. A careful examination of the plaintiff's contention as to his requested rulings discloses no reversible errors in law.

*Exceptions overruled.*